FRANCES SHAFIR *vs.* DUANE A. STEELE & another.[1]

Barnstable. January 6, 2000. - May 8, 2000.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, IRELAND, SPINA, & COWIN, JJ.

*Unlawful Interference. Contract,* Interference with contractual relations, Damages. *Damages,* Libel. *Practice, Civil,* Judgment notwithstanding verdict, Directed verdict. *Libel and Slander.*

This court recognized the tort of intentional interference with the performance of a contract as set forth in Restatement (Second) of Torts § 766A, in which the tortious conduct prevents a plaintiff from performing the plaintiff's own part of the contract with a third party. [368-371]

In a civil action, the defendant waived the issue of the amount of damages by failing properly to raise the issue at trial. [371]

In a claim for defamation, evidence of publication to one person was sufficient for libel [371-372]; further, the plaintiff proved actual damages [373].

CIVIL ACTION commenced in the Superior Court Department on January 6, 1994.

The case was tried before *Richard F. Connon,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Edward E. Veara* for the defendants.

*Merrill D. Goldfarb* for the plaintiff.

LYNCH, J. The defendant appeals from the denial of his motion for a directed verdict and motion for judgment notwithstanding the verdict (judgment n.o.v.) after a jury found him liable for defamation and intentional interference with contractual relations. The evidence warranted finding the defendant liable for intentional interference with another's performance of his own contract, a tort not heretofore expressly recognized in Massachusetts. Restatement (Second) of Torts § 766A (1979).

The defendant argues that this variation of the tort of intentional interference with a contract is not and should not be

---

[1]The Provincetown Advocate News Corporation. We shall refer to a single defendant.

part of the law in Massachusetts. Based on that assertion, the defendant claims (1) it was error to deny his motion for a directed verdict on the intentional interference with contractual relations claim because the plaintiff did not prove that the defendant induced a *third* party to breach the contract; and (2) the jury instructions and special verdict regarding the intentional interference with contractual relations count were flawed because they incorporated the elements of § 766A. In addition, the defendant claims that the amount of damages awarded on the intentional interference with contractual relations claim was excessive, and that the evidence on the defamation claim either was not sufficient or supported no more than nominal damages. We conclude that the judgment based on intentional interference with a contract was proper and affirm the defamation judgment.

1. *Facts and procedural history.* We summarize the pertinent evidence in the light most favorable to the plaintiff.[2] *Poly* v. *Moylan,* 423 Mass. 141, 143 (1996), cert. denied, 519 U.S. 1114 (1997). The defendant owns The Provincetown Advocate News Corporation, which publishes a newspaper called The Advocate in Provincetown. In 1993, the defendant and his business entities were in default on loans from Shawmut Bank (Shawmut), secured by a mortgage on the property at issue in this case, at 100 Bradford Street in Provincetown (property).[3] A loan restructuring agreement was worked out between Shawmut and the defendant, the only relevant details of which are that Shawmut would foreclose on the property, and that the defendant's children, through a trust, would bid at least $175,000 at the foreclosure sale. However, under the terms of the agreement, if a third party outbid the trust, the restructuring agreement would be null and void. Shawmut had valued the property at $275,000.

The foreclosure sale was held on July 6, 1993, and there were three or four bidders including the plaintiff, who was accompanied by a real estate agent, Patricia Shultz. The plaintiff's bid of $240,000 was $5,000 higher than the highest bid made by the defendant's children. She paid a $10,000 deposit and signed a purchase and sale agreement with Shawmut.

That evening, the defendant went to the plaintiff's movie

---

[2] We note that the plaintiff's brief contained not a single reference to the record, in violation of Mass. R. A. P. 16 (e), as amended, 378 Mass. 940 (1979).

[3] The Advocate office was located on the property.

theater. He stood "a little too close" to the plaintiff and, convey-ing "a sense of menace," told her that he was "not very well." On July 8, 1993, the defendant's newspaper published an editorial which essentially accused the plaintiff of bidding at the sale as retribution for The Advocate's refusing to drop its "Screen Scene" column which had once been critical of the plaintiff's movie theater. It concluded with a statement implying that the plaintiff intended to muzzle the newspaper.[4]

The defendant then requested that the plaintiff and Shultz meet with him without attorneys present; he stated that he was going to bring papers to show the two "what [they] were in for." The meeting took place on July 11, 1993, during which the defendant was "quite distraught" and told the women that they did not understand and kept insisting that the building "was his." Near the end of the meeting, the plaintiff offered to have the defendant buy out her position for $15,000, which the defendant rejected.

Although the papers the defendant promised to the women did not arrive in time for the meeting, the next day the defendant had them hand delivered to Shultz's office and the plaintiff picked up a copy. The "papers" were an unsigned legal complaint prepared by the defendant's attorney for filing in the United States Bankruptcy Court. Naming both the plaintiff and Shultz, the complaint charged them with fraud, extortion, and malicious interference with an advantageous contract (between the defendant and Shawmut). The complaint was never filed but, when the plaintiff read it, she knew the charges were crimes, and she felt "terror," "bludgeoned," "stun[ned]," "totally numb," and, later, "outrage," and "anger." The defendant testi-fied that he had read the complaint before he had it delivered to Shultz, and admitted that he, essentially, had no factual basis for any of the charges in the complaint.

Shortly thereafter, the plaintiff decided that the defendant's harassment was not going to stop. On July 26, 1993, the plaintiff's attorney sent a letter to Shawmut declaring her inten-tion not to close the sale and requesting the return of her

---

[4]The editorial declared: "We don't know why [the plaintiff] . . . bought the Advocate Building . . . [i]n any case, the freedom of this newspaper is not for sale — at any price."

$10,000.[5] Shawmut refused to return the deposit and maintained its right to seek recovery of additional expenses. The plaintiff, herself, wrote a letter to Shawmut seeking the return of her deposit. Shawmut again refused, stating that it was "ready, willing and able" to close the sale.[6]

2. *Intentional interference with contractual relations.*[7] We

[5]The letter also described the intimidation by the defendant, and said that, if she closed the deal, the plaintiff believed she would be facing litigation, harassment in the newspaper, and a tenant (i.e., the defendant) who was unlikely to leave willingly or to pay any rent. It also stated that Shawmut had not told the plaintiff about the status of tenancies and leases at the foreclosure sale. Finally, the letter suggested that Shawmut should inform the defendant that his actions would not be tolerated by Shawmut.

[6]Shawmut then asked the defendant's children, trustees of a realty trust, as the second highest bidder, whether they wanted to purchase the property for their bid of $235,000. They refused. Eventually, Shawmut sold the property to the defendant's children's realty trust for $175,000.

[7]The defendant's main argument is that Restatement (Second) of Torts § 766A (1979), is not the law of Massachusetts and thus the trial judge erred in using the elements of § 766A as a basis for instructions to the jury and for denying the defendant's motions for directed verdict and judgment n.o.v. Because we recognize that § 766A reflects the law of the Commonwealth, it is unnecessary for us to address these claims.

The defendant also argues that the judgment should be vacated because the plaintiff did not amend her complaint to allege a claim based either on § 766A or on intentional interference with contractual or business relations consistent with *Swanset Dev. Corp.* v. *Taunton,* 423 Mass. 390 (1996). The plaintiff's complaint did allege intentional interference with contractual relations. In addition, as discussed at note 10, *infra, Swanset Dev. Corp.* v. *Taunton, supra,* does not set out elements of a new tort. Moreover, although the language of the complaint did not mirror that of § 766A, the plaintiff points out that the complaint alleges that the defendant interfered with her contract with Shawmut. The defendant also acknowledges that the nature of the plaintiff's complaint was evident in her counsel's opening argument.

Furthermore, Mass. R. Civ. P. 15 (b), 365 Mass. 761 (1974), provides: "When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by the pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon

have previously recognized that §§ 766 and 766B reflect the law of Massachusetts. See *United Truck Leasing Corp.* v. *Geltman,* 406 Mass. 811, 816 (1990); Restatement (Second) of Torts § 766 comment c & § 766B comment b (1979) (historical development of the torts).

Restatement (Second) of Torts, *supra* at § 766A, provides:

> "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him."[8]

Thus, the only difference between the torts described in § 766, see note 8, *supra,* and § 766A is that, under § 766, the tortious conduct causes the third person not to perform, whereas § 766A involves interference preventing the plaintiff from performing his own part of the contract. See Restatement (Second) of Torts, *supra* at § 766A comments b and c.

We see no compelling reason not to recognize such conduct as being tortious. We have never specifically disavowed it. Several other jurisdictions have adopted it. See, e.g., *Callis, Papa, Jensen, Jackstadt & Halloran, P.C.* v. *Norfolk S. Corp.,* 292 Ill. App. 3d 1003, 1009 (1997); *MLI Indus., Inc.* v. *New York State Urban Dev. Corp.,* 205 A.D. 2d 998, 999 (N.Y. 1994); *Westfield Dev. Co.* v. *Rifle Inv. Assocs.,* 786 P.2d 1112, 1117-1118 (Colo. 1990). See also Restatement (Second) of Torts, *su-*

---

the merits. The court may grant a continuance to enable the objecting party to meet such evidence."

The defendant has not identified anywhere in the record where he objected to the evidence or argued prejudice. He did argue that the plaintiff did not show that the defendant induced Shawmut to breach the contract. Furthermore, the rule contains no time limit on amending complaints and the defendant has provided no cases establishing time limits.

[8]This language is similar to Restatement (Second) of Torts § 766 (1979), "Intentional Interference with Performance of Contract by Third Person," which states: "One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

*pra* at § 766A comment b (this tort is "now consistently recognized").[9]

In addition, as discussed in *Boyle* v. *Boston Found., Inc.,* 788 F. Supp. 627, 630 (D. Mass. 1992), we closely approached recognizing § 766A-type liability in *Anzalone* v. *Massachusetts Bay Transp. Auth.,* 403 Mass. 119, 123 (1988), where the plaintiff alleged that his supervisor interfered with his employment. Although we affirmed the dismissal of the complaint, we did not reject the principle of interference with the plaintiff's own performance of his employment contract, but focused instead on the fact that the plaintiff was still employed and did not allege loss of any advantage.[10] *Id.* Furthermore, we are not persuaded by the defendant's essentially public policy arguments in view of the indorsement of this theory of liability by the Restatement and the majority of States that have considered it.

Finally, at oral argument, the defendant stated that, if we were to recognize § 766A, we should apply it prospectively only. To do so would run contrary to our general approach in assessing tort liability, and we note that the defendant has provided no case to support his argument.[11] See, e.g., *George* v. *Jordan Marsh Co.,* 359 Mass. 244, 255 (1971) (liable for

---

[9]The defendant's discussion of recent cases reiterating the requirements of § 766 as third-party breach or his assertion that *Boyle* v. *Boston Found., Inc.,* 788 F. Supp. 627 (D. Mass. 1992), discussed *infra,* contained errors in reasoning, does not persuade us otherwise.

[10]As stated in note 7, *supra,* the defendant also points out that *Swanset Dev. Corp.* v. *Taunton, supra* at 397, may have set out new elements regarding intentional interference with contractual or business relations because the elements did not state that a defendant had to induce a third party to breach the contract. Looking at the line of cases on which *Swanset Dev. Corp.* v. *Taunton, supra,* relied, the listed elements are not a hint of something new. Instead they are elements of intentional interference with advantageous relations, which does not require a contract. See *Comey* v. *Hill,* 387 Mass. 11, 19 (1982), quoting J.R. Nolan, Tort Law § 72, at 87 (1979). As we noted in *United Truck Leasing Corp.* v. *Geltman,* 406 Mass. 811, 815 n.6 (1990), "[w]e have not consistently distinguished" between intentional interference with advantageous relations and intentional interference with contractual relations.

[11]As part of his oral argument counsel for the defendant stated that it was obvious that the defendant planned to act as he did after consulting with his attorney and being told that the kind of interference he contemplated was legal. Counsel stated that the defendant should be permitted to rely on such information. There is nothing in the record indicating that the defendant relied on the advice of his attorney to plan his interference and, even if there were,

severe emotional distress "even though he has committed no [previously] recognized common law tort").

Except for the amount of damages, the defendant does not argue that the plaintiff did not prove the elements of § 766A. We therefore do not address them.

3. *Damages for contract claim.* The defendant argues that the amount of damages awarded for the interference with contract claim was excessive. The defendant did raise the issue of damages in a motion for judgment n.o.v. Mass. R. Civ. P. 50 (b), 365 Mass. 814 (1974). However, a party may not raise an issue in a motion for judgment n.o.v. that was not raised in a motion for directed verdict. J.W. Smith & H.B. Zobel, Rules Practice § 50.14, at 210 (1977).[12] Furthermore, "[q]uestions concerning inadequate or excessive damages are initially within the discretion of the trial judge and should ordinarily be raised by bringing a motion for a new trial . . . . [Where there is a failure to do so, we] are . . . not required to consider this issue on this appeal." *Pridgen* v. *Boston Hous. Auth.*, 364 Mass. 696, 715 (1974), citing *Parker* v. *Lewis J. Bird Co.*, 221 Mass. 422, 426 (1915). The issue is waived.[13]

4. *Defamation.* The defendant argues that the evidence was insufficient to sustain a judgment for defamation, or if the evidence was sufficient, the defamation award should be nominal. In response to an inquiry from the judge after the verdict had been announced but before the jury were dismissed, the foreperson stated that it was the false, unsigned complaint rather than the newspaper editorial that the jury found to be defamatory, so we address only the complaint. See generally *Jamgochian* v. *Dierker*, 425 Mass. 565, 567 (1997) (judge asked

---

the defendant has provided us with no cases to support the principle that we should not apply a newly acknowledged tort to someone who relied on an attorney before acting. The record indicates only that the attorney drew up the unsigned complaint that the defendant used to intimidate the plaintiff.

[12]We note that neither the plaintiff nor the defendant adequately addressed the issue of waiver in their briefs. The plaintiff mentioned it in one sentence in a footnote, with no citation to authority. The defendant's treatment of the issue was more extensive but did not give any authority to support his contention that the issue was properly raised because he raised it in the judgment n.o.v.

[13]In addition, the defendant argues, inter alia, that the judge erred in permitting the jury to consider damages based on an assessment of the property's value at the time of trial. Although defense counsel did object to the jury instructions, he objected solely to allowing lost profits as part of the measure of damages. The issues he raises now are thus waived.

whether majority supported civil verdict). We note that neither the plaintiff nor the defendant fully addresses the complaint issue. Each devotes a mere paragraph to the issue in their briefs.[14]

In addition, the defendant, citing *Driscoll* v. *Boston Edison Co.*, 25 Mass. App. Ct. 954, 956 (1988), argues that publication of the complaint to Shultz would not be sufficient to support the defamation claim because Shultz was in a position to know whether the statements in the complaint were true. Furthermore, the defendant argues that, if there was sufficient publication, there could be no damages because the plaintiff did not prove actual damages. We address each of these arguments in turn.

The defendant concedes that publication to one other person is sufficient for libel. See *Brauer* v. *Globe Newspaper Co.*, 351 Mass. 53, 56 (1966), quoting Restatement (Second) of Torts § 577 (1977) ("it is enough that [libel be] communicated to a single individual")[15]; *Marble* v. *Chapin*, 132 Mass. 225 (1882). In *Marble* v. *Chapin*, *supra*, we held that a plaintiff, who was falsely accused of having an affair with a married woman, could recover for libel when the only person to whom the statement was published was the married woman herself. It follows, therefore, that the publication to Shultz was sufficient, even though she was in a position to know that the accusations were not true.

*Driscoll* v. *Boston Edison Co.*, *supra*, does not advance the defendant's cause. That case involved a claim against a union president for sending the plaintiff's wife a copy of an allegedly defamatory agreement that would eventually have allowed the plaintiff to be reinstated at his job. *Id.* at 954. An actual malice standard applied to the issue, and the statements themselves were merely innuendo, albeit understood by the plaintiff's wife. In deciding that there was no malice the court relied on the fact that the plaintiff's wife knew that the statement was not an assertion of the truth but was made in part for her husband's benefit, and the fact that the wife appeared to be acting on behalf of her incapacitated husband. *Id.* at 956. Here, the libel is between private parties, and malice is not in issue. See *Stone* v. *Essex County Newspapers, Inc.*, 367 Mass. 849, 858 (1975).

---

[14]The defendant does devote several pages to a discussion of the editorial, but that document is irrelevant because the jury did not find the defendant liable for defamation based on the editorial.

[15]Unless privileged, communication to the agent of the defamed is also a publication. See Restatement (Second) of Torts § 577 comment e (1977).

5. *Damages for libel claim.* Damages for libel are limited to compensatory damages for actual injury, including harm to reputation and mental suffering. See *Stone* v. *Essex County Newspapers, Inc.*, *supra* at 860, and cases cited. With mental suffering the plaintiff is entitled to recover for the "distress and anxiety which may have been the natural result of the legal wrong." *Markham* v. *Russell*, 12 Allen 573, 575 (1866). See *Mahoney* v. *Belford*, 132 Mass. 393, 394 (1882) (recovery for "mental feelings . . . which [are] the natural and necessary result of the [defamation]"). See *Hastings* v. *Stetson*, 130 Mass. 76 (1881). However, if a plaintiff cannot prove damages but can prove libel, the plaintiff is entitled to nominal damages. See *Lakian* v. *Globe Newspaper Co.*, 399 Mass. 379, 382 (1987), and cases cited; Restatement (Second) of Torts § 620 (1977) ("One who is liable for . . . libel is liable for at least nominal damages"). Moreover, imputation of a crime is defamatory per se. *Stone* v. *Essex County Newspapers, Inc.*, *supra* at 853, citing *Lynch* v. *Lyons*, 303 Mass. 116, 118-119 (1939).

In this case, the plaintiff has proved libel because extortion and fraud are crimes making them defamatory per se. The plaintiff testified about her mental suffering on reading the complaint. She stated her feelings of being "bludgeoned," "stunn[ed]," and then "outrage" and "anger." Such feelings are the "natural result" of the defamation, sufficient to prove mental suffering.[16]

Judgment for the plaintiff on the intentional interference with another's performance of his own contract claim is affirmed. The challenge to the award of damages on the intentional interference with another's performance of his own contract claim is dismissed. The judgment on the defamation claim is affirmed.

*So ordered.*

---

[16]For a discussion of negligently caused emotional distress, see *Payton* v. *Abbott Labs*, 386 Mass. 540, 550-557 (1982).