2009 OK 12

**WILSPEC TECHNOLOGIES, INC., an Oklahoma corporation, Plaintiff,**

v.

**DUNAN HOLDING GROUP CO., LTD. formerly known as DunAn Group Co. Ltd., formerly known as Zhejiang DunAn Group Co. Ltd., a Chinese corporation, Defendants.**

No. 106,174.

Supreme Court of Oklahoma.

Feb. 10, 2009.

---

James E. Warner, III, Stephen R. Johnson, Holladay & Chilton, PLLC, Oklahoma City, for Plaintiff.

Charles B. Goodwin, Mack J. Morgan, III, Marie S. Johnston, Phillip L. Free, Jr., Crowe & Dunlevy, Oklahoma City, for Defendant.

COLBERT, J.

¶ 1 In an action for tortious interference, Plaintiff brought suit against Defendants in the District Court for the Western District of Oklahoma for hindering Plaintiff's performance or rendering Plaintiff's performance more costly or burdensome in a contract between Plaintiff and a third party. That court has certified two questions pursuant to the Revised Uniform Certification of Questions of Law Act, Okla. Stat. tit. 20, §§ 1601–1611 (2001):

1. Whether Oklahoma adopts Restatement (Second) of Torts § 766A, which states:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

2. If so, whether Oklahoma would permit punitive damages on such a claim.

In response, this Court adopts Restatement (Second) of Torts § 766A and holds that Okla. Stat. tit. 23, § 9.1 (2001) is the statutory vehicle that governs all claims for punitive damages.

## FACTS

¶ 2 Pursuant to section 1604(A)(2) of title 20, the federal court has submitted "[t]he facts relevant to the question[s], showing fully the nature of the controversy out of which the question[s] arose." Those facts are repeated here, verbatim.

¶ 3 Plaintiff, Wilspec Technologies, Inc., and defendant, DunAn Holding Group Co. Ltd., both design, manufacture, and sell parts for air conditioning units. On Novem-

ber 20, 2002, plaintiff entered into a three-year contract with defendant's predecessor in interest, Zhejiang DunAn Group Co., Ltd. Pursuant to the contract, defendant was to manufacture various heating ventilating and air conditioning ("HVAC") parts for sale by plaintiff throughout North America. The products included, but were not limited to, certain air conditioning parts known as service valves and reversing valves, and were to be sold under the Wilspec brand. Plaintiff was designated the exclusive reseller or distributor for the products in the North American market.

¶4 During the term of the contract, plaintiff entered into multiple-year contracts to supply service and reversing valves with three HVAC manufacturers and secured the right to supply valves to other HVAC manufacturers on a quote and purchase order basis. Plaintiff alleges defendant intentionally interfered with plaintiff's contractual or business relations with its HVAC customers by: (1) directly soliciting the sale of products and selling products to plaintiff's existing and prospective customers in North America; (2) unilaterally changing the contract price and payment terms; (3) refusing to manufacture and ship products without payment in advance; (4) failing to maintain design, manufacturing, and product quality standards; (5) failing to build and ship products within the four week lead time specified in the contract; (6) delivering defective, non-conforming products; (7) refusing to manufacture and ship components to plaintiff following termination of the parties' contract so plaintiff could continue to serve customers with existing contracts and purchase or supply agreements; and (8) making disparaging statements to plaintiff's customers about plaintiff's financial condition and ability to perform and telling plaintiff's customers that plaintiff had breached its contract with defendant. Plaintiff claims that as a result of defendant's actions, it was unable to meet its customers' requirements in a timely manner and a number of its customers terminated their business with plaintiff.

¶5 Plaintiff seeks actual and punitive damages for defendant's alleged intentional interference with its contractual and business relations. In support of this claim, plaintiff alleges it had contracts with numerous customers to supply them with components defendant agreed to manufacture; defendant knew plaintiff had contracted with such customers; defendant knew plaintiff's customers depended on plaintiff to supply them with such components and that a failure on defendant's part to manufacture the components in conformity with the 2002 Agreement would disrupt and possibly destroy plaintiff's customer relations and result in significant economic harm to plaintiff; and defendant's actions were not justified, warranted, or excusable, but were carried out in furtherance of an unlawful scheme to intentionally undermine and eventually destroy plaintiff's contractual and business relations with its customers so that defendant could sell the components directly to plaintiff's customers.

## QUESTION 1
## INTENTIONAL INTERFERENCE WITH ANOTHER'S PERFORMANCE OF HIS OWN CONTRACT

¶6 The Restatement Second of Torts presents various species of the intentional interference claim. An interference may be a: (1) section 766 interference with a third party's performance with an existing contract; (2) section 766A interference with plaintiff's own performance; or (3) section 766B interference with prospective contractual relations not yet reduced to contract.[1]

¶7 It is well established that Oklahoma has embraced two variations of the intentional tortious interference claims found at sections 766 and 766B. The section 766 variation is illustrated in *Morrow Development Corp. v. American Bank and Trust Co.*, 1994 OK 26, 875 P.2d 411. Section 766 states:

One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to

---

**1.** The Restatement (Second) of Torts, § 766C also recognizes a negligent interference with ei-

ther a contract or a prospective contractual relation.

perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract.

Restatement (Second) of Torts (1977). In *Morrow*, a borrower and bank entered into a loan agreement for the development of real property. The agreement required the borrower to initiate a secondary contract engaging the services of a developer for management of the real estate project. Additionally, the primary agreement conditioned advances upon the sale of additional lots. The lot sales, however, never occurred and bank demanded additional security from borrower and threatened to initiate foreclosure proceedings under Okla. Stat. tit. 12, § 686 (1991), if borrower failed to comply. In response, borrower executed a deed-in-lieu of foreclosure [2], transferring title to the mortgaged land to bank. The developer brought suit alleging that bank's actions tortiously interfered with the developer-borrower contract. Developer claimed that the bank's primary purpose was to deprive the developer of its contractual rights with borrower. Bank however, successfully defended against developer's claim because bank's conduct was privileged conduct that gave bank a complete defense against developer's section 766 tortious interference claim.

¶ 8 In *Brock v. Thompson*, 1997 OK 127, 948 P.2d 279, this Court was presented with a section 766B-type [3] interference with one's advantageous business relations. In *Brock*, promoters of an initiative petition launched a campaign to bring about tort reform. Their campaign included publishing statements relating to the trial lawyers and their profession. The trial lawyers asserted that the promoters "conspired to use unlawful means" to bring about a change in the fundamental law of the state which amounted to *inter*

*alia*, injury to their property interest in their practiced profession. Promoters contended their activities were constitutionally protected and that they were immune from civil liability. This court concluded that the trial lawyers' claim for tortious interference was not viable as promoter's actions constituted political free speech and was not unlawful. A section 766B claim of tortious interference with one's advantageous business relations will only lie where a defendant has acted with unlawful means.

¶ 9 What remains unclear is whether Oklahoma has recognized a cause of action under section 766A. Section 766A provides:

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive and burdensome, is subject to liability to the other for the pecuniary loss resulting to him.

Restatement (Second) of Torts (1979). This language is similar to section 766 which is part of our existing law. *See Mac Adjustment, Inc. v. Prop. Loss Research Bureau,* 1979 OK 41, 595 P.2d 427.

¶ 10 The core distinction between the torts described in section 766 and section 766A is to whom the defendant's conduct is targeted. Section 766 focuses on conduct directed at a third party which induces the third party to breach his contract with the plaintiff. Section 766A on the other hand, is concerned with conduct targeted at the plaintiff which hinders plaintiff's own performance or renders plaintiff's performance more burdensome or costly. *See* Restatement (Second) of Torts § 766A, Comment C (1979). Additionally unlike section 766, section 766A does not

---

2. A defaulting borrower may avoid all *in personam* liability for a loan, including those claims arising under Okla. Stat. tit. 12, § 686 (1991) for post-judgment deficiency by conveying an absolute deed title to real property pledged as security for the indebtedness. This is known as a "deed-in-lieu of foreclosure." *Morrow,* 1994 OK 26, ¶ 4 n. 3, 875 P.2d 411 n. 3.

3. The Restatement (Second) of Torts § 766B states: One who intentionally and improperly

interferes with another's prospective contractual relation (except a contract to marry) is subject to liability to the other for the pecuniary harm resulting from loss of the benefits of the relation, whether the interference consists of (a) inducing or otherwise causing a third person not to enter into or continue the prospective relation or (b) preventing the other from acquiring or continuing the prospective relation.

require a breach or nonperformance for liability to attach. However, in either case, the inducer either prevents or hinders the performance of a valid contract to which it is not a party.

¶ 11 The policy reasons for recognizing a tortious interference claim under section 766A and section 766 are virtually the same. For the past seventy-five years, and well before the passage of section 766A in 1979, this Court has repeatedly protected contractual relationships between parties from unprivileged, unjustified, and inexcusable interference from one who is not a party to the contract or business relation. *See Crystal Gas Co. v. Oklahoma Natural Gas. Co.*, 1974 OK 34, 529 P.2d 987; *Nat'l Life & Accident Ins. Co. v. Wallace*, 1933 OK 160, 21 P.2d 492; *Stebbins v. Edwards*, 1924 OK 227, 224 P. 714; *Schonwald v. Ragains*, 1912 OK 210, 122 P. 203. In *Stebbins v. Edwards*, this Court, stated:

> The common law seeks to protect every person against the wrongful acts of others, whether committed alone or by combination, and an action may be had for injuries done which cause another loss in the enjoyment of any right or privilege or property. . . . Losses willfully caused by another, from motives of malice, to one who seeks to exercise and enjoy the fruits and advantages of his own enterprise, industry, skill, and credit, will sustain an action. It is clear that it is unlawful and actionable for one man, from unlawful motives, to interfere with another's trade by fraud or misrepresentation, or by molesting his customers, or those who would be customers, or by preventing others from working for him, or causing them to leave his employ, by fraud or misrepresentation, or physical or moral intimidation or persuasion, with an intent to inflict an injury which causes loss.

1924 OK 227, ¶ 6, 224 P. 714, 715.

¶ 12 Additionally, since our 1912 pronouncement in *Schonwald*, this Court has never affirmatively drawn a distinction between a plaintiff's or third party's nonperformance as a basis for recognizing a tortious interference cause of action. 1912 OK 210, 122 P. 203. Maliciously interfering in a contract between two parties and inducing one of them to break that contract to the injury of the other is an actionable wrong against the inducer. Whether the inducer procures a third party breach, as demonstrated in section 766; makes plaintiff's performance more oppressive, or in the most egregious of cases, procures plaintiff's breach, as in section 766A, the inducer's actions are nonetheless a tort. The harm a section 766A plaintiff suffers is just as genuine and damaging as that to the plaintiff in a section 766 claim.[4]

¶ 13 Oklahoma does not stand alone in its view. The Supreme Judicial Court of Massachusetts decided a similar matter in *Shafir v. Steele*, 431 Mass. 365, 727 N.E.2d 1140 (2000). In *Shafir*, a successful bidder at a foreclosure sale sued a newspaper-trust who previously owned and presently occupied a foreclosed property for intentionally interfering with bidder's purchase agreement with bank. Prior to the foreclosure sale, newspaper-trust worked out a restructuring agreement with bank. The restructuring agreement permitted newspaper-trust to repurchase the foreclosed property for $100,000 below market value, provided that no third party outbid the newspaper-trust. The bank valued the property at $275,000. On the day of the sale, newspaper-trust was outbid and immediately launched a campaign of defamatory statements in the media and served successful bidder with a legal complaint charging the bidder with fraud, extortion, and malicious interference with the restructuring agreement. At trial, newspaper-trust admitted the complaint lacked a factual basis but delivered it to the bidder nonetheless. Bidder; realizing that newspaper-trust's harassment would not end, sent a

---

4. Moreover, permitting an injured party to recover even though it was he who had been induced by the defendant to break the contract is no different than permitting recovery against an actor who maliciously interfered with a prospective business relationship or economic advantage—a situation which does not require a contract for liability to attach. *See Stebbins*, 1924 OK 227, 224 P. 714; *See also Brock*, 1997 OK 127, ¶ 31 n. 58, 948 P.2d 279, 293 n. 58 (1997) (Interference includes inducing a third person not to enter into the prospective relation or preventing the other party from acquiring the prospective relation).

letter to the bank declaring bidder's intention not to close the sale and requesting bidder's deposit be returned. In addition, bidder described (among other things) newspaper-trust's intimidation tactics and stated that she believed she would be facing litigation and that newspaper-trust was unlikely to leave willingly or pay rent. The bank refused to return bidder's deposit and maintained its right to recover additional expenses. The bank eventually sold the property to newspaper-trust for $175,000. The *Shafir* court, acknowledging that no Massachusetts case had expressly adopted section 766A, affirmed the trial court's jury verdict for bidder. The *Shafir* court reasoned that the only difference between the torts described in sections 766 and 766A are the nonperforming parties. The court explained that there was no compelling reason to deny recovery under section 766A, and that it "never specifically disavowed it." *Id.* at 369, 727 N.E.2d 1140.

¶ 14 In this Court's view, section 766A is another avenue to demonstrate tortious interference. A section 766 tortious interference with a contractual relation claim and a section 766B tortious interference with a business relation claim have been previously recognized by this Court as viable causes of actions. Under existing Oklahoma law, sections 766 and 766B require that the inducer act maliciously[5] and improperly[6]—the same elements required in a section 766A claim. *John A. Henry & Co., Ltd. v. T.G. & Y. Stores Co.*, 941 F.2d 1068, 1072 (10th Cir.1991) (citing *Overbeck v. Quaker Life Ins. Co.*, 1984 OK CIV APP 44, 757 P.2d 846). To predicate a cause of action solely on the identification of the breaching party and to

deny recovery where plaintiff's performance is hindered or rendered more costly is without reason and a distinction this Court refuses to draw.

¶ 15 Presently, Oklahoma recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage. *Mac Adjustment, Inc.*, 1979 OK 41, ¶ 5, 595 P.2d 427, 428. Additionally, the claim is viable only if the interferor is not a party to the contract or business relationship. *Voiles v. Santa Fe Minerals, Inc.*, 1996 OK 13, ¶ 18, 911 P.2d 1205, 1209.

¶ 16 Although Defendants provide adverse authority from other jurisdictions, we believe that where the law provides a remedy against a tortfeasor who induces or causes a third party not to perform the contract, the protection against such tortious acts extends to a party who is unable to perform his/her contract or where such performance becomes more costly or unduly burdensome. To hold otherwise would unjustly enrich a tortfeasor and leave a plaintiff less than whole.

## QUESTION TWO

### PUNITIVE DAMAGES

¶ 17 The second question certified to this Court inquires as to whether punitive damages are permissible on a section 766A claim. Typically, punitive damages are not recoverable solely for breach of contract obli-

---

**5.** The comment to the Oklahoma Uniform Jury Instruction (OUJI)(Civil) No. 24.2 provides: "[An] intentional interference may be malice in the law without personal hatred, ill will, or spite." This section further describes a defendant's conduct as intentional if the defendant "either desired to interfere with [Plaintiff]'s contract with [Third Party], or [he/she/it] was substantially certain that his actions would interfere with the contract." OUJI Civil 24.2.

**6.** The Oklahoma Uniform Jury Instruction (OUJI)(Civil) No. 24.1 comments provide the following factors to determine whether a defendant's conduct was improper:

1. The nature of the defendant's conduct;
2. The defendant's motive;
3. The interests of the plaintiff with which the defendant's conduct interfered;
4. The interests sought to be advanced by the defendant;
5. The social interests in protecting the freedom of action of the defendant and the contractual interests of the plaintiff;
6. The proximity or remoteness of the defendant's conduct to the interference claimed by the plaintiff; and
7. The relationship among the plaintiff, [name of breaching party], and the defendant.

gations. However, when a breach of obligations arises from tortious conduct, as alleged in this case, punitive damages may be recoverable.[7] *See, e.g., Burk v. K–Mart Corp.*, 1989 OK 22, ¶ 17, 770 P.2d 24, 28; *See also* Restatement (Second) Contracts § 355 (1981) ("Punitive damages are not recoverable for a breach of contract unless the conduct constituting the breach is also a tort for which punitive damages are recoverable"). A tortious interference claim is predicated on the tort. *Mac Adjustment, Inc.*, 1979 OK 41, 595 P.2d 427.

■ ¶ 18 Punitive damages are awarded only in the most egregious circumstances and are aimed at punishing the offending party. In addition to proving the elements of a tort, the plaintiff seeking punitive damages for tortious interference with a contract obligation must prove that the defendant acted either recklessly, intentionally, or maliciously by clear and convincing evidence. *See* Okla. Stat. tit. 23, § 9.1 (2001).

## CONCLUSION

¶ 19 Today we recognize a plaintiff's right to maintain a cause of action against an interferor when wrongful acts are aimed at hindering or otherwise rendering plaintiff's performance more costly or burdensome in a contact between plaintiff and a third party. Accordingly, this Court adopts Restatement (Second) of Torts, § 766A (1979), and holds that Okla. Stat. tit. 23, § 9.1 (2001), is the statutory vehicle that governs all claims for punitive damages.

**CERTIFIED QUESTIONS ANSWERED.**
**ALL JUSTICES CONCUR.**

7. Today's answer to the second question posed does not assure the plaintiff that it will be entitled to an instruction on punitive damages. Until all the proof has been adduced and the case stands ready to be cleared for submission to the triers, neither this court nor the federal court whence the question came will be able to ascertain whether the proof that will be adduced at trial would warrant a punitive damages charge to the jury.