NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

22-P-1010

JAMES J. LYONS & others[1]

vs.

WILLIAM P. JOHNSON[2] & another.[3]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

After a 2015 Superior Court jury trial, the defendants William P. and Gail Johnson (the Johnsons) appeal from judgments totaling $4.8 million entered against them in favor of the plaintiffs, James J. and Bernadette T. Lyons, their sons Tyler and Michael, and their business, Mity Pups, Inc. (Mity Pups). We refer to the plaintiffs collectively as the Lyonses. The Johnsons claim numerous errors at the summary judgment stage and at trial. Concluding that all of their claims are waived, we affirm the judgments.

---

[1] Bernadette T. Lyons, individually and as mother and next friend of Michael J. Lyons and Tyler J. Lyons; and Mity Pups, Inc., doing business as Dandi-Lyons.

[2] Individually and as trustee of Vale Realty Trust and manager of Fay Homes, LLC.

[3] Gail Johnson.

Background.  As a result of protracted and contentious litigation over a land dispute, the Johnsons embarked on a campaign of harassment against their neighbors, the Lyonses. The Lyonses filed this lawsuit in 2009, alleging tortious interference with advantageous business relationships (TIABR), tortious interference with contractual relations, assault, intentional infliction of emotional distress (IIED), negligent interference with emotional distress (NIED), and fraudulent conveyance.  The case moved slowly pending the criminal prosecution of the Johnsons stemming from the same events.  In 2011, the Johnsons were convicted of criminal harassment, and William Johnson was convicted of making a false report of child abuse by James Lyons to the Department of Children and Families; those convictions were affirmed on appeal.  See Commonwealth v. Johnson, 470 Mass. 300 (2014).  The facts are set forth in Johnson and need not be repeated here.  See id. at 303-306.

Once the convictions were affirmed, the Lyonses moved in 2015 for partial summary judgment on liability, arguing that the doctrine of issue preclusion barred the Johnsons from contesting the facts established in the criminal case.  The Johnsons did not oppose the motion; their counsel "agree[d] it's a damages

2

case."[4]  A judge allowed the motion, stating, "So we're going forward . . . on the issue of damages."

The parties then stipulated to the dismissal of the Lyonses' claims for tortious interference with contractual relations and NIED.  They also agreed that all of the claims for fraudulent conveyance (which concerned a transfer of assets to avoid the Lyonses' pretrial attachment) could be held in abeyance.  This left for trial the claims of assault, IIED, and TIABR.

On the first day of the 2015 trial, the judge confirmed with counsel:  "We all understand that we're going forward today on the issue of damages not on the issue of liability?"  Defense counsel responded, "That is correct."  On the second day of trial, before opening statements, defense counsel sought to clarify that there were only five incidents as to which liability had been established:  the four incidents of harassment and the one false report of child abuse, all occurring in 2008, that led to the convictions in Johnson.  Counsel stated his understanding that the Lyonses intended to offer evidence of additional incidents of harassment and that,

---

[4] The Johnsons' trial counsel was disbarred in 2017.  See Matter of Stein, 33 Mass. Att'y Discipline Rep. 441 (2017).  New counsel represents them in this appeal.

3

if so, they would need to prove liability as well as damages. The judge and the Lyonses' counsel agreed.

The Lyonses then put on their case-in-chief, which included testimony about the impact of the five 2008 incidents; evidence of a 2010 assault by William Johnson against James Lyons and his sons; and evidence that Mity Pups lost business after the Johnsons publicized false sexual abuse allegations against James Lyons online. The Johnsons unsuccessfully moved for a directed verdict on the assault claims brought by James and Bernadette Lyons and on the IIED claim brought by their son Tyler.

The Johnsons then testified in their own defense. At the close of all the evidence, the Lyonses moved for a directed verdict on their claims of assault and IIED, and the judge allowed this motion. Although the Johnsons have not supplied a transcript of any argument on the motion or of any explanation the judge gave for his ruling, the docket states that the motion was allowed "based upon defendants not contesting liability in the matter but going forward as to the issue of damages."[5]

The jury were instructed that the Johnsons had stipulated to liability on the assault and IIED claims, so that the jury needed to determine only the issue of damages. No mention was

---

[5] The Johnsons supplied only partial transcripts of the proceedings on the day the motion was made and allowed. The Johnsons supplied what appear to be full transcripts of the other days of trial.

made of the TIABR claims. Among the types of damages the jury were instructed to consider was "lost earning capacity," which the judge stated was applicable to Mity Pups as well as the Lyonses individually. The jury returned verdicts of $1.25 million each for James and Bernadette Lyons; $500,000 each for Tyler and Michael Lyons; and $1.3 million for Mity Pups. Judgments entered accordingly, and the Johnsons filed a notice of appeal.[6]

The Lyonses then sought a jury-waived trial on their fraudulent conveyance claims, but matters were delayed by William Johnson's late 2015 bankruptcy filing, followed by several years of collection efforts by the Lyonses. The Johnsons also filed a motion for a new trial, which was denied. The Johnsons then filed a motion to compel assembly of the record; that motion was allowed, and the appeal was docketed in this court in October 2022.

Discussion. 1. Appellate jurisdiction. The Johnsons' brief argued that their own appeal was not properly before us

---

[6] Contrary to the judge's order, the judgment for James Lyons initially entered against only William Johnson. After the Johnsons filed their notice of appeal, the judgment was corrected under Mass. R. Civ. P. 60 (a), 365 Mass. 828 (1974), so as to run against Gail Johnson as well. Although she did not then file a new notice of appeal, we treat that judgment against her as before us, particularly in light of the further proceedings described infra regarding separate and final judgments.

because there was no final judgment on all claims; the fraudulent conveyance claims remained unadjudicated. After oral argument in October 2023, we stayed appellate proceedings and gave the parties leave to file, and the Superior Court leave to consider, a motion or motions under Mass. R. Civ. P. 54 (b), 365 Mass. 820 (1974). The Lyonses filed such a motion, and on February 28, 2024, it was allowed, with an express determination that there was no just reason for delaying the entry of the judgments ordered and entered in 2015. Concluding that we now had jurisdiction of the appeal of those judgments, we vacated the stay of appellate proceedings and now address the Johnsons' remaining arguments.[7]

2. Partial summary judgment on liability. The Johnsons argue that the judge erred in relying on their criminal convictions to order summary judgment on liability, because some of the civil claims asserted by the Lyonses were not addressed in the criminal case. Defense counsel agreed to summary judgment on liability, however, and repeatedly agreed that the remaining dispute was about damages. The Johnsons cannot now reverse course and argue that summary judgment on liability was

_____

[7] While the Lyonses sought to clear up the jurisdictional issue in Superior Court, the Johnsons moved to dismiss their appeal, under Mass. R. A. P. 29 (b), as appearing in 481 Mass. 1660 (2019). We deny that motion; judicial economy is best served by resolving the issues already briefed and argued as to judgments entered nearly nine years ago.

6

improper.  See Albert v. Municipal Court of Boston, 388 Mass. 491, 493-494 (1983) (argument not made in trial court cannot be raised for first time on appeal).

Relatedly, the Johnsons argue that, because the case was not fully adjudicated on the summary judgment motion, the judge was required to "make an order specifying the facts that appear without substantial controversy."  Mass. R. Civ. P. 56 (d), 365 Mass. 824 (1974).  The Johnsons never objected to the judge's failure to do so, however, nor did they request that he do so. The issue is therefore waived.  See Albert, 388 Mass. at 493-494.

3.  Additional liability evidence at trial.  The Johnsons next argue that, in light of the summary judgment ruling, the judge erred in "inexplicably proceed[ing] to determine liability on new claims" at trial.  The Johnsons complain that the judge "did not provide notice of what evidence and testimony would be produced during trial . . . and allowed for the admission of evidence and argument that was not contained in the [c]omplaint."[8]

---

[8] We pass over the point that, at least absent some request for clarification of the summary judgment ruling, it was not the judge's responsibility to provide notice to the parties of what evidence would be produced at trial.  We note the Johnsons' concession that they conducted no discovery, and we are unpersuaded by their claim that discovery would have been futile.

7

This ignores that, before opening statements, defense counsel asserted his understanding that the Lyonses' counsel now "intend[ed] to introduce evidence [of] harassment that my clients were never convicted of," and that "if he's going to bring those issues into this case he has to [inaudible] those issues." The judge agreed, and the Lyonses' counsel, while expressing puzzlement over why the Johnsons would want to agree to some incidents but contest others, said, "[I]f that's the way you want to try the case[,] let's go." Although there are some minor gaps in the transcript, it seems clear that the parties and the judge understood that if the Lyonses sought damages based on incidents not proved in the criminal trial, they would need to offer evidence of liability (as well as damages) for those incidents.

The Lyonses then offered evidence of two such incidents: the 2010 assault by William Johnson on James Lyons and his sons, and the Johnsons' spreading of false allegations that caused Mity Pups to lose business. The Johnsons did not object that this new liability evidence was beyond the scope of the issues to be tried. At the close of their case, the Lyonses sought a directed verdict on liability on their assault and IIED claims, and the judge allowed the motion "based upon defendants not contesting liability." And defense counsel did not object when the judge instructed the jury that liability on the assault and

8

IIED claims had been established and that the only issue to be decided was damages. In these circumstances, not having objected at trial, the Johnsons cannot now argue that the judge erred by admitting evidence to show liability for incidents not already proved at the criminal trial. See Albert, 388 Mass. at 493-494.

4. Assault claim based on 2010 incident. In a variation on the preceding argument, the Johnsons assert that, because the complaint alleged an assault based only on a 2008 incident addressed in the criminal case,[9] the judge erred by allowing the admission of evidence about the 2010 assault. As just discussed, however, the Johnsons did not object at trial to the admission of this evidence. An objection raised for the first time on appeal comes too late.

As the Johnsons recognize, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings." Mass. R. Civ. P. 15 (b), 365 Mass. 761 (1974). As they further recognize, "[u]nder this

---

[9] The incident involved the Johnsons causing notice to be posted on the Internet site "Craigslist" that caused dozens of unwitting third parties to appear at the Lyonses' home and ask for free golf carts, thus frightening Bernadette Lyons. This was one of the incidents of harassment underlying the Johnsons' convictions, and the Supreme Judicial Court ruled that evidence of the incident was sufficient to support the convictions. See Johnson, 470 Mass. at 302-304, 312-314.

9

rule, there is implied consent to litigate an issue if there is no objection to the introduction of evidence on the unpleaded issue, as long as the non-objecting party was fairly appr[]ised that the evidence went to the unpleaded issue" (citation omitted). Wolfe v. Ford Motor Co., 6 Mass. App. Ct. 346, 355 (1978). The Johnsons now argue that they were not so apprised. They assert that their counsel did not understand, until the close of the Lyonses' case-in-chief and the argument on the Johnsons' motion for a directed verdict, that the evidence of the 2010 assault was intended to support the assault claim.[10]

Even assuming that to be true, however, defense counsel did not object once he realized the significance of the evidence. He did not seek at that time or any other to exclude consideration of the 2010 assault from the case. Rather, when William Johnson testified in the defense case, counsel asked whether he had committed the act (a hand gesture) that underlay the claim of the 2010 assault, and William Johnson denied it. Counsel referred to that evidence in his closing argument, and he did not object when the Lyonses' counsel did the same. Nor does it appear that counsel sought any instruction to the jury that they should not consider the 2010 incident as an assault.

---

[10] On appeal the Johnsons argue in their brief that the evidence could "easily be confused with a claim for harassment." But the complaint had not asserted any claim for "harassment" as such.

10

In the circumstances, we are not persuaded that there was any error or unfair surprise. Any error that might have occurred has been waived.[11]

The Johnsons also argue that the judge erred in denying their motion for a directed verdict on the assault claim at the close of the Lyonses' case-in-chief. This argument is not now open to the Johnsons, because they introduced evidence on the assault claim in their own case and then did not renew their motion for a directed verdict at the close of all the evidence. See Hammell v. Shooshanian Eng'g Assocs., Inc., 73 Mass. App. Ct. 634, 640 (2009). Relatedly, the Johnsons argue that the judge erred in allowing the Lyonses' motion for a directed verdict on liability for assault at the close of all the evidence. As we have seen, however, the judge allowed the Lyonses' motion "based upon defendants not contesting liability," and so any challenge to the sufficiency of the evidence of liability has been waived.

5. Evidentiary errors. The Johnsons next assert that the judge erred or abused his discretion in admitting certain

_____

[11] The Johnsons further argue that, had they known the 2010 incident would be the basis for an assault claim, they could have asserted a statute of limitations defense. This argument, too, was never raised in the trial court and so is waived. See Albert, 388 Mass. at 493-494.

11

testimony over the Johnsons' objections.[12]  The Johnsons argue that the objected-to testimony went to issues not alleged in the complaint and that its prejudicial effect exceeded its probative value.  We have examined each of the challenged passages of testimony and conclude that none of the objections were stated to be based on either of the grounds just mentioned, nor would the judge have reasonably understood them to be so based.  "When objecting, counsel should state the specific ground of the objection unless it is apparent from the context."  Commonwealth v. Marshall, 434 Mass. 358, 365 (2001), quoting P.J. Liacos, Massachusetts Evidence § 3.8.3, at 85 (7th ed. 1999).  Here, counsel's objections appear to have been based on hearsay, questions that called for a legal conclusion, or nonresponsiveness, or else to have had no clear basis at all. In short, the objections the Johnsons now raise were waived.

6.  Tyler Lyons's IIED claim.  The Johnsons next argue that, with respect to Tyler Lyons's IIED claim, the judge erred in directing a verdict against the Johnsons on liability,

---

[12] The evidence concerned:  (1) a threat made by William Johnson the day before Valentine's Day in 2008; (2) an accusation that one of the Lyons boys inappropriately touched girls at school; (3) a claim that William Johnson tried to rip the Lyons boys out of their house and then "sit and watch it"; (4) a claim that William Johnson "thought [it] was really funny" that James Lyons was accused of abusing a fifteen year old boy; and (5) a claim that the Johnsons were going to accuse the Lyons boys of being "Peeping Toms," in order to cause their arrest.

12

because there was no evidence that Tyler Lyons was present for any of the extreme and outrageous conduct directed at his family members. Once again, however, the judge allowed the Lyonses' motion "based upon defendants not contesting liability," and so any challenge to the sufficiency of the evidence of liability on this claim has been waived.

7. Damages award to Mity Pups. The Johnsons challenge the award of $1.3 million in damages to Mity Pups on its claims for TIABR, on the ground that the judge ultimately dismissed those claims after trial. When judgment nevertheless entered for Mity Pups, however, the Johnsons failed to object or seek clarification. Their claim of error is therefore waived.

The record is clear enough that, on the third day of trial, Mity Pups, through counsel and outside the presence of the jury, stated its intention to pursue its TIABR claims, and defense counsel did not object or disagree.[13] Mity Pups introduced some evidence in support of those claims. The special verdict form (at least as read into the record when the jury returned its verdicts) asked, among other things, whether the Johnsons' actions were "a substantial factor in causing the damages and injuries sustained by the plaintiff, Mity Pups, Inc." It further asked what amount of compensation the jury awarded Mity

---

[13] Bernadette Lyons's TIABR claims were not mentioned.

13

Pups for any such damages and injuries.  The jury answered the causation question in the affirmative and awarded Mity Pups $1.3 million in damages.  The record reflects no objection by defense counsel to the special verdict form or to the recording of the verdict for Mity Pups.

The judge's order for judgment referred to the verdict having been returned on claims of assault, IIED, "and upon claims of . . . lost earning capacity" -- a reference that could have been intended to encompass Mity Pups's TIABR claims -- but then stated that "[t]he remainder of the plaintiffs' claims are now dismissed by stipulation of the parties or upon there being no evidence presented to the jury at trial."  This order, standing alone, could be read to mean that Mity Pups's TIABR claims were dismissed.

But judgment then entered for Mity Pups.  If the Johnsons believed this was in contravention of the judge's order or otherwise in error, they could and should have sought relief under Mass. R. Civ. P. 59 (e), 365 Mass. 827 (1974), or Mass. R. Civ. P. 60 (a), 365 Mass. 828 (1974).  Having failed to claim error in the trial court, they may not do so on appeal.[14]

_____

[14] The Johnsons also failed to preserve their arguments that evidence of Mity Pups's lost revenues was admitted in error. Although defense counsel asserted stray objections to some of the evidence, his grounds were far from clear.  None of the three grounds asserted on appeal was clearly made known to the judge or would have been apparent from the context.

14

8. <u>Closing argument</u>. The Johnsons argue that the Lyonses' closing argument was improper. They did not object at trial, however, and thus the issue is waived.[15] The Johnsons nevertheless ask us to address the issue, despite the lack of objection, under the "plain error" doctrine, in order to prevent what they assert is "a manifest miscarriage of justice." <u>Michnik-Zilberman</u> v. <u>Gordon's Liquor, Inc</u>., 14 Mass. App. Ct. 533, 537 (1982), <u>S.C.</u>, 390 Mass. 6 (1983), quoting <u>Little</u> v. <u>Bankers Life & Cas. Co</u>., 426 F.2d 509, 511 (5th Cir. 1970). <u>Michnik-Zilberman</u>, however, arose in the narrow context of a particular sequence of motions for a directed verdict and for judgment notwithstanding the verdict. <u>Michnik-Zilberman</u>, <u>supra</u> at 536-537. The Johnsons offer no developed and persuasive argument as to why the plain error doctrine should be extended to the circumstances of this case, particularly given the importance of the oft-repeated competing rule in civil cases that issues not raised in the trial court may not be raised for the first time on appeal. See, e.g., <u>Columbia Plaza Assocs</u>. v. <u>Northeastern Univ</u>., 493 Mass. 570, 585 n.7 (2024); <u>Eno</u> v.

_____

[15] The Johnsons argue that the judge had an independent duty to cut off or take curative action in response to the Lyonses' closing argument. But the cases the Johnsons cite do not hold it reversible error for a judge not to do so in the absence of an objection. See <u>Gath</u> v. <u>M/A-Com, Inc</u>., 440 Mass. 482, 495 (2003); <u>Rolanti</u> v. <u>Boston Edison Corp</u>., 33 Mass. App. Ct. 516, 529 (1992).

15

McGinn, 103 Mass. App. Ct. 662, 670 n.17 (2024).  See also R.B., petitioner, 479 Mass. 712, 716 (2018).

Assuming arguendo that the plain error doctrine were available in the context of an assertedly improper closing argument in a civil case,[16] we would not apply it here.  The Johnsons have identified numerous objectionable passages in the Lyonses' closing argument, but they have done little to explain, and have cited no cases to establish, that the resulting prejudice rises to the high level necessary to show "a manifest miscarriage of justice" (citation omitted), Michnik-Zilberman, 14 Mass. App. Ct. at 537, or a "manifest injustice."  Rotkiewicz v. Sadowsky, 431 Mass. 748, 752 n.3 (2000).  The Johnsons offer no standard against which the unpreserved claims of assertedly improper closing argument in this case could be said to present a manifest injustice, while unpreserved claims of improper argument in other cases would not.

The Supreme Judicial Court has emphasized that courts may reach unpreserved claims in "exceptional cases."  Albert, 388 Mass. at 494, quoting Hormel v. Helvering, 312 U.S. 552, 557

---

[16] Although the Johnsons have not cited it, we note one Massachusetts decision discussing the plain error doctrine in this context.  See Fyffe v. Massachusetts Bay Transp. Auth., 86 Mass. App. Ct. 457, 471 & n.18 (2014).  That discussion was dictum, because there was no claim that the defendants had not preserved their objections to the plaintiff's closing argument. See id.

16

(1941).  The Johnsons do not show how this case is exceptional.
We therefore do not consider the merits of the challenge to the
Lyonses' closing argument.  For the same reason, we do not
consider the Johnsons' related assertion that the judge failed
to adequately instruct the jury that closing arguments are not
evidence.

9.  Excessive damages.  The Johnsons argue that the damages
awarded to each plaintiff were excessive, but they failed to
make this argument to the trial judge in a timely motion for a
new trial.  "Questions concerning inadequate or excessive
damages are initially within the discretion of the trial judge
and should ordinarily be raised by bringing a motion for a new
trial."  Pridgen v. Boston Hous. Auth., 364 Mass. 696, 715
(1974).  Absent a motion raising the issue in the trial court,
an appellate court is not required to consider it.  Id.  See
Shafir v. Steele, 431 Mass. 365, 371 (2000) (same).  The issue
is therefore waived.

Conclusion.  The judgments dated April 27, 2015, for Mity
Pups and Bernadette, Michael, and Tyler Lyons are affirmed.  The

corrected judgment dated May 29, 2015, for James Lyons is affirmed.

<u>So ordered</u>.

By the Court (Wolohojian, Desmond & Sacks, JJ.[17]),

Assistant Clerk

Entered: April 5, 2024.

---

[17] The panelists are listed in order of seniority.