ONLINE OIL, INC. v. CO&G PRODUCTION GROUP, LLC



 

 
 
 
 
 
 Skip to Main Content
 Accessibility Statement
 
 
 
 
 
 Help
 Contact Us
 
 
 
 
 e-payments
 Careers
 
 
 
 
 
 
 
 
 
 
 
 Home
 Courts
 Decisions
 Programs
 News
 Legal Research
 Court Records
 Quick Links
 
 
 
 
 
 OSCN Found Document:ONLINE OIL, INC. v. CO&G PRODUCTION GROUP, LLC

 

 
 



 
 
 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 
 

 
 ONLINE OIL, INC. v. CO&G PRODUCTION GROUP, LLC
2018 OK CIV APP 1
Case Number: 112681; Consol. w/112904
Decided: 08/29/2017
Mandate Issued: 01/03/2018
DIVISION IV
THE COURT OF CIVIL APPEALS OF THE STATE OF OKLAHOMA, DIVISION IV
Cite as: 2018 OK CIV APP 1, __ P.3d __

 

ONLINE OIL, INC., an Oklahoma corporation and REALTY DEVELOPERS, LLC, an Oklahoma Limited Liability Company, Plaintiffs,
v.
CO&G PRODUCTION GROUP, LLC, an Oklahoma Limited Liability Company, Defendant/Third-Party Plaintiff/Appellee,
and
JERRY PARENT, an individual, Defendant,
v.
KRIS AGRAWAL, an individual, Third-Party Defendant/Appellant,
and
COAL GAS USA, LLC, an Oklahoma Limited Liability Company, COAL GAS MART, LLC, an Oklahoma Limited Liability Company, REALTY MANAGEMENT ASSOCIATES, LLC, an Oklahoma Limited Liability Company, VIMALA AGRAWAL, an individual and NEWTON AGRAWAL, an individual, Third-Party Defendants,
and
KENSLEY PETROLEUM, LLC, an Oklahoma Limited Liability Company, Plaintiff,
v.
CO&G PRODUCTION, LLC, Defendant.

APPEAL FROM THE DISTRICT COURT OF
TULSA COUNTY, OKLAHOMA

HONORABLE MARK BARCUS, TRIAL JUDGE

AFFIRMED IN PART, VACATED IN PART, MODIFIED IN PART AND
REMANDED FOR FURTHER PROCEEDINGS 
CONSISTENT WITH THIS OPINION

Phillip P. Owens II, OWENS LAW OFFICE, PC, Oklahoma City, Oklahoma and
James O. Goodwin, GOODWIN & GOODWIN, Tulsa, Oklahoma, for Plaintiffs Online Oil, Inc.; and Realty Developers, LLC; and for Third-Party Defendants Coal Gas USA, LLC; Coal Gas Mart, LLC; and Realty Management Associates, LLC

CO&G PRODUCTION GROUP, LLC, an Oklahoma Limited Liability Company, Currently unrepresented

Jerry Parent, Porum, Oklahoma, Pro Se

Kris Agrawal, Oklahoma City, Oklahoma, Pro Se

JOHN F. FISCHER, PRESIDING JUDGE:

¶1 Kris Agrawal, Online Oil, Inc., Realty Developers, LLC, Coal Gas USA, LLC, Coal Gas Mart, LLC and Realty Management Associates, LLC,[1] (Agrawal defendants) appeal the district court's December 5, 2013 Final Journal Entry of Judgment in favor of CO&G Production Group, LLC and the May 14, 2014 order denying their motion for new trial. This case arose from a contract dispute concerning the purchase of oil and gas interests previously owned by some of the Agrawal defendants and the transfer of operations for the producing wells on those leases. After this appeal was filed, the United States Bankruptcy Court for the Western District of Oklahoma granted a petition for involuntary bankruptcy naming Kris Agrawal as the debtor and stayed further proceedings in this appeal. On April 24, 2017, that court granted Agrawal's request for relief from the automatic stay, permitting this appeal to proceed. The Agrawal defendants have failed to preserve certain issues for appellate review and shown no error by the district court with respect to all but two of the issues preserved for review. The award of actual damages on CO&G's tortious interference claim is modified by this Court to $13,500 and the award of punitive damages on CO&G's two tort claims is vacated. In all other respects, the December 5, 2013 Final Journal Entry of Judgment is affirmed, and this case is remanded for further proceedings consistent with this Opinion regarding the punitive damages issue. The district court's May 14, 2014 order denying the Agrawal defendants' motion for new trial is affirmed in part and reversed in part consistent with this Opinion.

BACKGROUND

¶2 This dispute concerns an August 21, 2007 Contract for Sale of Lease Rights and Appointment of Operator in what the parties refer to as the Hill Top Redfork Sands Units 1, 2 and 3 located in Tulsa County, Oklahoma. At that time, Online was the operator of the wells in the Hill Top Units and Realty Developers owned oil and gas leases in those units. Online and Realty Developers are companies owned and operated by Kris Agrawal. The contract was signed by Jerry Parent on behalf of CO&G and by Gregory Williams on behalf of Realty Developers. The contract states that the operation of the Hill Top Units wells was transferred to CO&G and that CO&G was purchasing the Hill Top Units oil and gas leases previously owned by Realty Developers.

¶3 After CO&G assumed operations of the Hill Top Units, Realty Developers and Online filed suit challenging the sale of the Hill Top Units leases alleging that the person who signed the contract on behalf of Realty Developers did not have authority to do so. CO&G filed a counterclaim and third-party claim joining the remaining Agrawal defendants in the litigation. CO&G sued to establish and foreclose its operator's lien on the interest in the Hill Top Units owned by the Agrawal defendants, and for fraud, tortious interference, breach of contract, unjust enrichment, quiet title, reformation and declaratory relief.

¶4 Pursuant to an order filed May 25, 2011, the district court granted CO&G's motion for partial summary judgment on its lien foreclosure claim and request for declaratory relief. In summary, the district court found that the Agrawal defendants had been "duly served" with the motion for partial summary judgment, that CO&G was the operator of the Hill Top Units, and that CO&G had a statutory and contractual lien in the amount of $3,282,218.37 for unpaid operating expenses against any interest owned by any of the Agrawal defendants in the Hill Top Units. The May 2011 order also authorized the sheriff to "levy upon and sell/auction any interest that the Agrawal defendants may now have or may ever acquire in the mineral leasehold underlying the Hilltop [sic] Units . . . ." The findings, conclusions and partial judgment in favor of CO&G on its lien theory contained in this order were incorporated into the district court's December 5, 2013 Final Journal Entry of Judgment.

¶5 The December 2013 judgment also granted judgment against Online and Realty Developers as to all claims asserted by those plaintiffs against CO&G. In addition, judgment was granted in favor of CO&G and against the Agrawal defendants on CO&G's remaining theories for fraud, intentional interference, breach of contract, unjust enrichment, quiet title, reformation and declaratory relief. This aspect of the judgment was imposed as a sanction for failing to participate in the discovery process and for failing to comply with the court's discovery and pretrial conference orders. The judgment recites the Agrawal defendants' "repeated history" of "failing to cooperate in the discovery process, abusing the discovery process and violating this Court's orders which warranted sanctions by this Court pursuant to 12 O.S. § 3237(B)(2)."[2] The matter was then set for hearing on the amount of damages. At the conclusion of that hearing, the district court found that CO&G's damages for unpaid operating expenses on its lien theory had increased to $5,508,689.89 and reformed its previous judgment to reflect that amount. The district court entered judgment for this amount of actual damages on CO&G's breach of contract, fraudulent inducement and tortious interference claims. The court also found that CO&G was entitled to punitive damages on CO&G's two tort theories in the amount of $5,508,689.89 and included that amount in its December 2013 judgment.

¶6 Within ten days, the Agrawal defendants filed a motion seeking reconsideration of the December 5, 2013 judgment. That motion was denied by order filed May 14, 2014. The Agrawal defendants appeal both the December 2013 Judgment and the May 2014 order denying their motion for reconsideration.[3]

 

STANDARD OF REVIEW

 

¶7 "A motion seeking reconsideration, re-examination, rehearing or vacation of a judgment . . . which is filed within 10 days of the day such decision was rendered, may be regarded as the functional equivalent of a new trial motion, no matter what its title." Horizons, Inc. v. Keo Leasing Co., 1984 OK 24, ¶ 4, 681 P.2d 757. The Agrawal defendants' motion for reconsideration is properly treated as a motion for new trial. The district court is vested with wide discretion in ruling on a motion for new trial, and its order will be reversed only if the court is deemed to have erred with respect to a pure, simple and unmixed question of law. Jones, Givens, Gotcher & Bogan, P.C. v. Berger, 2002 OK 31, ¶ 5, 46 P.3d 698. A trial court's denial of a motion for new trial is reviewed for abuse of discretion. Head v. McCracken, 2004 OK 84, ¶ 2, 102 P.3d 670.

¶8 The December 2013 judgment also granted judgment in favor of CO&G on its remaining claims as a sanction pursuant to 12 O.S.2011 § 3227, based on the Agrawal defendants' failure to cooperate in discovery and violation of the court's orders regarding the production of documents. The standard of review for a district court's sanction order entered pursuant to section 3227 is also abuse of discretion. Payne v. DeWitt, 1999 OK 93, ¶ 9, 995 P.2d 1088 ("[T]he trial court's discretion, while broad, is not unbridled. The sanction must be both fair and related to the particular claim (or defense) at issue in the discovery order.").

¶9 "An abuse of discretion occurs when a decision is based on an erroneous conclusion of law or where there is no rational basis in evidence for the ruling." Spencer v. Oklahoma Gas & Elec. Co., 2007 OK 76, ¶ 13, 171 P.3d 890 (emphasis omitted) (footnote omitted).

¶10 The amount of the December 2013 judgment was determined after a nonjury trial on the issue of damages. "The proper standard of review in an action at law is that the findings of the trial court are as binding on appeal as the verdict of a jury, and if there is competent evidence to support the findings, they will not be disturbed on appeal." Dismuke v. Cseh, 1992 OK 50, ¶ 7, 830 P.2d 188.

¶11 Finally, the December 2013 judgment also included an award of punitive damages. Punitive damages may be imposed in actions for the breach of obligations not arising out of contract, and the proceedings are governed by 23 O.S.2011 § 9.1. Lierly v. Tidewater Petroleum Corp., 2006 OK 47, ¶ 30, 139 P.3d 897. Punitive damages are now authorized where the trier of fact finds "by clear and convincing evidence" that a party "has been guilty of reckless disregard for the rights of others" (Category I), or that a party "has acted intentionally and with malice towards others" (Category II). 23 O.S.2011 § 9.1. In this case tried to the district court, we review the district court's findings of fact to determine if there is clear and convincing evidence in the record to support the award of punitive damages. See Wilspec Techs., Inc. v. Dunan Holding Group Co. Ltd., 2009 OK 12, 204 P.3d 69 (holding that plaintiff seeking punitive damages for tortious interference must prove by clear and convincing evidence that the defendant acted either recklessly, or intentionally and maliciously). Cf., In re S.B.C., 2002 OK 83, ¶ 7, 64 P.3d 1080 (noting that "use on review of anything less than the very same standard as that which is required in the trial courts" would water down the heightened standard and render it "meaningless"). See also State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 418, 123 S. Ct. 1513,1520 (2003) (punitive damage awards are subject to "exacting" de novo appellate review).

ANALYSIS

I. The Motion for New Trial

¶12 Although Kris Agrawal appears pro se in this appeal, the motion for new trial was filed in the district court on his behalf and on behalf of all of the Agrawal defendants by their counsel at the time.[4] That motion argued four propositions: (1) the "harsh sanction" of default judgment was improper because only Online and Realty were served with discovery requests, and the Agrawal defendants' conduct was not malicious because the material not produced was privileged; (2) default judgment was unjust because of the defendants' "meritorious claims and defenses;" (3) the award of punitive damages was unsupported by the law or the facts; and (4) irregularity in the proceedings and the excessive amount of damages warrant a new trial.

¶13 It is important to examine these arguments in detail. "If a motion for a new trial be filed and a new trial be denied, the movant may not, on the appeal, raise allegations of error that were available to him at the time of the filing of his motion for a new trial but were not therein asserted." 12 O.S.2011 § 991(b). The Supreme Court has consistently invoked this statute to restrict the appellate issues to those raised in a motion for new trial. See, e.g., Slagell v. Slagell, 2000 OK 5, 995 P.2d 1141; Horizons, Inc. v. Keo Leasing Co., 1984 OK 24, 681 P.2d 757. A "motion for new trial . . . acts to limit the issues reviewed on appeal to those raised by that motion." City of Broken Arrow v. Bass Pro Outdoor World, L.L.C., 2011 OK 1, ¶ 11, 250 P.3d 305. Consequently, we address only those issues raised in the Agrawal defendants' motion for new trial and preserved for review in their appellate briefing. Okla. Sup. Ct. R. 1.11(k)(1), 12 O.S.2011 and Supp. 2013, ch. 15, app. 1. See also Walker v. Walker, 1985 OK 2, ¶ 4, 695 P.2d 1 (noting that issues not supported by argument and authority in a party's brief may be deemed waived).

A. Judgment Imposed as a Sanction

¶14 The foundation of the discovery dispute concerns CO&G's 2009 request for production of documents and the redacted copies of emails to and from Kris Agrawal produced in response to that request. CO&G's discovery requests were served on Online and Realty Developers on January 16, 2009. Only ninety pages of documents have been produced, even though Kris Agrawal testified that he had a "room full" of documents relating to those companies and the Hill Top Units. The ninety pages of documents were produced by Kris Agrawal as the designated representative of Online in response to a 2009 notice to take deposition. Included in those documents are copies of emails to or from Kris Agrawal with material appearing in the margins that had been redacted. Kris Agrawal's original counsel stated that the redacted material contained notes made by Kris Agrawal and comments on the substance of the emails. She stated she redacted this material because she believed the notes were subject to the attorney/client privilege. That action eventually resulted in two sanctions orders, a November 13, 2012 order sanctioning Online and Realty Developers, and an August 26, 2013 order sanctioning the remaining Agrawal defendants.

¶15 As stated in CO&G's first motion to compel, counsel for Online and Realty Developers agreed in an August 31, 2012 conversation that he would produce unredacted copies of those emails. Online and Realty Developers did not file a response to CO&G's first motion to compel. On October 29, 2012, the district court granted CO&G's motion and ordered Online and Realty Developers to produce the requested documents within ten days, including unredacted copies of the emails. Neither Online nor Realty Developers produced any documents. On November 13, 2012, the district court granted CO&G's motion for sanctions finding Online and Realty Developers had failed to comply with the court's October 29, 2012 order.

¶16 Citing section 3234 of the Oklahoma Discovery Code (12 O.S.2011 §§ 3224 to 3237), the Agrawal defendants point out that any party is authorized to serve a request for the production of documents on any other party. However, the Agrawal defendants argue that no discovery requests were ever served by CO&G on any party other than the plaintiffs, Online and Realty Developers. From this, they conclude that the third-party defendants could not have failed to produce documents because no request for the production of documents was served on them. Therefore, they maintain that the third-party defendants cannot be sanctioned pursuant to section 3237 for failure to comply with a discovery request.

¶17 First, this argument concedes the propriety of sanctioning Online and Realty Developers for failing to comply with the district court's October 29, 2012 order. Second, this argument ignores undisputed facts that are dispositive of the other Agrawal defendants' argument.

¶18 Even though discovery requests were not served on all of the Agrawal defendants, the district court "has inherent authority to impose sanctions for abuse of the discovery process. That is, the trial court has the power to sanction for abusive litigation practices or for abuse of judicial process, even if an order compelling discovery has not been made." Barnett v. Simmons, 2008 OK 100, ¶ 14, 197 P.3d 12. And, although the district court found that the other Agrawal defendants had a repeated history of abusing the discovery process, reliance on the court's inherent authority is not necessary in this case.

¶19 The pretrial conference order was filed May 29, 2013. That order states: "Third Party Defendants are ordered to produce unredacted, emails requested by CO&G, by July 1, 2013." When no documents were produced, CO&G filed its second motion for sanctions, this time against Kris Agrawal, Coal Gas USA, Coal Gas Mart and Realty Management on July 26, 2013. These parties also failed to file a response to CO&G's motion for sanctions, and the district court granted that motion on August 26, 2013. The fact that these parties were not served with discovery requests is, therefore, immaterial. The district court "is empowered by Oklahoma's discovery code to sanction parties or attorneys who violate discovery orders. [Section] 3237(B)(2) provides for sanctions to be imposed by the court for failure to obey an order to provide or permit discovery." Barnett, 2008 OK 100, ¶ 14 (footnote omitted).

¶20 The pretrial conference order required Kris Agrawal, Coal Gas USA, Coal Gas Mart and Realty Management to produce the unredacted emails. These defendants do not claim that the district court lacked the power to order them to produce those documents. These parties' failure to comply with the pretrial order is clearly sanctionable. Okla. Dist. Ct. R. 5(J), 12 O.S.2011, ch. 2, app.

¶21 Kris Agrawal also argues that he did not willfully refuse to comply with the district court's discovery orders because: "Kris Agrawal never knew of the Court's Orders compelling . . . production [of the unredacted emails]." The only evidentiary support in the motion for new trial for this statement comes from Kris Agrawal's previous counsel, Larry Stewart. Attached to the motion for new trial is Stewart's affidavit in which he states that his "clients were unaware of the specific Orders from the Court regarding such [discovery] issues." What "specific Orders" Stewart is referring to is not made clear in his affidavit. What is clear is that Stewart attended the pretrial conference during which the district court ordered Kris Agrawal, among others, to produce the unredacted emails by July 1, 2013. In his affidavit, Stewart denies being timely served with CO&G's motions to compel but he does not deny receiving a copy of the pretrial order. In fact, in his affidavit, Stewart states that at the end of June and the beginning of July 2013, he "worked with [his] clients to resolve all outstanding [discovery] issues," including the production of documents "required by the Court's Pretrial Conference Order." Nonetheless, the unredacted copies of the emails were not produced by July 1, 2013, as ordered by the district court.

¶22 In fact, the unredacted emails were not produced until December of 2013, and then only to the district court, under seal, pursuant to a claim of attorney-client privilege that the Agrawal defendants raised for the first time in their motion for new trial. We find this argument disingenuous, at best, and ultimately unpersuasive. As the district court found, on July 2, 2013, the day after the district court ordered that the emails be produced, the Agrawal defendants asserted that the unredacted copies of the emails had been "lost." Later they claimed that the emails had been "destroyed." Only after judgment had been entered against them were they able to find the unredacted emails and offer them to the district court under a claim of privilege. The Agrawal defendants were a day late and a dollar short with their discovery response. Cf., Hayes v. Central States Orthopedic Specialists, Inc., 2002 OK 30, 51 P.3d 562 (delay in asserting a privilege may result in waiver of the privilege). We hold that by failing to assert their claim of attorney/client privilege, at least by the time of the pretrial conference, the Agrawal defendants waived their right to later assert that claim. The district court did not err in granting judgment against the Agrawal defendants as a sanction on CO&G's breach of contract, fraudulent inducement and tortious interference theories of liability and that aspect of the December 2013 judgment is affirmed.

B. The Agrawal Defendants' Claim of "Meritorious" Defenses

¶23 In their second proposition of error, the Agrawal defendants rely on the general principle that default judgments are disfavored and that a trial on the merits is preferred. That law is not disputed. The Agrawal defendants then argue that the default judgment should be set aside because they have meritorious defenses worthy of a trial. Specifically, they argue that Gregory Williams, the person signing the August 2007 contract on behalf of Realty Developers to sell its oil and gas leases to CO&G, did not have authority to do so. Attached to their motion for new trial are documents supporting this contention. However, determining the materiality of that "defense" requires context.

¶24 First, the Agrawal defendants' argument addresses only the ownership of the oil and gas leases in the Hill Top Units. On February 28, 2007, Kris Agrawal executed Corporation Commission forms transferring operation of the Hill Top Units to CO&G, and the district court found and entered a judgment declaring that CO&G was the operator of the Hill Top Units.

¶25 Second, CO&G's motion for partial summary judgment sought only three rulings: (1) a declaration that it was the operator of the Hill Top Units; (2) a determination that it had a valid and enforceable operator's lien for the expenses it had incurred while operating the wells in the Hill Top Units; and (3) a ruling that CO&G was entitled to enforce its lien against any interest in the Hill Top Units owned by the Agrawal defendants. Ownership of the Hill Top Units leases by virtue of the August 2007 contract was not at issue in the partial summary judgment proceeding.

¶26 Third, the three facts CO&G sought to establish in the partial summary judgment proceeding are conclusively established by the May 2011 partial judgment and confirmed by the December 2013 final judgment. As a result, the $5,508,689.89 judgment in favor of CO&G is not attributable to the district court's sanctions orders but is based solely on the expenses CO&G incurred while operating the wells in the Hill Top Units. That judgment is enforceable regardless of who owns the leases in the Hill Top Units. Consequently, even if the Agrawal defendants were to prevail on their claim of ownership of the Hill Top Units leases, they would still be subject to CO&G's lien. In its May 2011 partial summary judgment, the district court foreclosed CO&G's operator's lien, thereby transferring ownership of the Hill Top Units to CO&G independent of any interest it did or did not acquire pursuant to the August 2007 contract. Therefore, the argument that Gregory Williams did not have authority to sign the August 2007 contract fails to raise an issue of fact precluding the partial summary judgment in favor of CO&G on its lien foreclosure claim.

¶27 The only other challenge the Agrawal defendants raise addressing the merits of the judgment in favor of CO&G is contained in footnote 6 to their motion for new trial, in which they purport to incorporate "the specific evidence previously submitted in Plaintiffs' filing of February 7, 2011, as the basis for error in the Journal Entry of Judgment filed May 25, 2011 in this case." The February 7, 2011 objection to CO&G's motion for partial summary judgment was filed by Kris Agrawal at a time when he and the other Agrawal defendants were represented by counsel. When CO&G moved to strike that filing because Kris Agrawal was not permitted to represent the other Agrawal defendants, counsel for all of the Agrawal defendants, including Kris, filed a notice with the district court on March 14, 2011, withdrawing the February 7, 2011 filing. Subsequently, Kris Agrawal's February 7, 2011 filing was stricken by the district court. Consequently, footnote 6 to the Agrawal defendants' motion for new trial incorporates nothing.

¶28 In their effort to demonstrate the alleged need for a trial on the merits of their defense to CO&G's claim, the Agrawal defendants have failed to show that any facts material to CO&G's lien foreclosure claim are in dispute. That aspect of the district court's December 2013 judgment was not granted as a sanction because the Agrawal defendants refused to comply with the district court's discovery and pretrial conference orders. That judgment was based on the undisputable fact that CO&G is the operator of the wells in the Hill Top Units and the unchallengeable law that CO&G has and is entitled to enforce its operator's lien against any interest in the Hill Top Units leases owned by any of the Agrawal defendants.

¶29 Consequently, the Agrawal defendants' motion for new trial does not preserve for appellate review any issue regarding the judgment in favor of CO&G on its lien foreclosure claim. The liability imposed as a sanction regarding CO&G's other claims only duplicates, in essence, the liability imposed by the foreclosure judgment. As a result, the Agrawal defendants have not shown that the district court erred in granting judgment in favor of CO&G for actual damages on CO&G's lien foreclosure, breach of contract, fraudulent inducement and tortious interference claims.[5]

 

III. Punitive Damages

 

¶30 The Agrawal defendants argue that the award of punitive damages is not supported by law or fact. In addition, they contend that the punitive damage award is "shockingly excessive and flagrantly outrageous." CO&G presented two theories of liability on which the district court granted punitive damages: (1) it was fraudulently induced to sign the August 2007 contract; and (2) after the sale, the Agrawal defendants tortiously interfered with CO&G's business operations. Liability on both theories was imposed as a sanction based on the Agrawal defendants' willful and bad faith refusal to comply with the court's discovery and pretrial conference orders. After the September 26, 2013 hearing on damages, the district court awarded actual damages in the amount of $5,508,689.89 on CO&G's lien foreclosure, breach of contract, fraudulent inducement and intentional interference with business relations theories of liability. In addition, the district court awarded punitive damages on each of CO&G's two tort theories in an amount equal to the amount of actual damages.

A. Notice

¶31 The Agrawal defendants first complain that they were not served with notice of the September 26, 2013 hearing on damages during which punitive damages were awarded. Nonetheless, the Agrawal defendants' counsel appeared at the hearing and requested a continuance claiming he had just found out about the hearing by accident because CO&G's motion was mailed to the wrong address. The district court conducted a hearing on that motion before proceeding with the damage issue. The court found that although the Agrawal defendants' counsel had apparently changed his address, CO&G had mailed the notice of hearing to the address listed on his entry of appearance. The district court recited into the record various recent occasions on which the Agrawal defendants' counsel had appeared on various matters after receiving notice mailed to the same address. The court also noted that the September hearing had been set for six weeks. We find no error in the district court's denial of the motion for continuance and its finding that the Agrawal defendants had adequate notice of the September hearing.

B. Procedure

¶32 The Agrawal defendants next argue that the September 26 hearing did not provide the meaningful review of the damages issue required by Payne v. DeWitt, 1999 OK 93, 995 P.2d 1088 (holding that the district court must conduct a meaningful inquiry into the amount of actual and punitive damages, allowing the party in default to cross-examine witnesses and present evidence). At the hearing on damages, CO&G introduced evidence supporting the actual damages it incurred as operator of the wells in the Hill Top Units. Ron Walker testified on behalf of CO&G that the operating expenses of $3,282,218.37 previously awarded had increased to $5,508,689.89 since the partial summary judgment was granted. Walker testified that amount included most but not all of the operating expenses it had incurred. He testified that he did not have time before the hearing to properly identify and support another $50,000 he estimated CO&G had incurred. The Agrawal defendants' counsel was given the opportunity to cross-examine Walker and did so. The Agrawal defendants' counsel was given the opportunity to offer any evidence during the hearing, but did not do so. Nonetheless, at the conclusion of the hearing the district court gave the parties until October 11, 2013, to file proposed findings of fact and conclusions of law. On that date, CO&G filed its proposed findings and conclusions, but the Agrawal defendants requested an additional ten days to file their proposed findings and conclusions. On October 24, 2013, when no findings and conclusions had been filed by the Agrawal defendants, the district court adopted the findings and conclusions filed by CO&G and later incorporated those findings and conclusions into its December 2013 judgment. We find no procedural or due process error in the manner in which the district court conducted the September 26, 2013 hearing.

C. The Tortious Interference Claim

¶33 The district court also granted judgment in favor of CO&G on its tortious interference with business theory of liability for both actual and punitive damages. This is a separate cause of action and arose after execution of the August 2007 contract. In support of this claim, the district court found that the Agrawal defendants "recorded various legal instruments which purport to convey or burden [CO&G's] leasehold interests in the Hilltop [sic] Units," that those actions "were designed to undermine CO&G's ownership of oil and gas leasehold interest in the Hilltop [sic] Units," and that the Agrawal defendants made "false representations to Scissortail Energy which caused Scissortail Energy to cease doing business with CO&G."

Presently, Oklahoma recognizes a tortious interference claim with a contractual or business relationship if the plaintiff can prove (1) the interference was with an existing contractual or business right; (2) such interference was malicious and wrongful; (3) the interference was neither justified, privileged nor excusable; and (4) the interference proximately caused damage.

Wilspec Techs., Inc. v. Dunan Holding Group Co., Ltd., 2009 OK 12, ¶ 15, 204 P.3d 69. Even though the district court imposed liability on this claim as a sanction, the evidence in this record fully supports CO&G's claim that the Agrawal defendants tortiously interfered with CO&G's business operations.

¶34 The district court awarded CO&G actual damages on this claim in the amount of its operating expenses, $5,508,689.89. This was error. At the September 2013 hearing on damages, Ron Walker testified that as a result of Kris Agrawal's misrepresentations to Scissortail Energy, that company stopped purchasing oil and gas from CO&G. However, the only damage Walker attributed to Agrawal's wrongful interference with CO&G's business was the expense of hiring a lawyer to "address [Agrawal's] misrepresentations" to Scissortail Energy. The exhibit introduced by CO&G at the hearing shows those legal fees to be $13,500 and that this amount was excluded from the $5,508,689.89. The December 5, 2013 judgment is modified to award actual damages to CO&G on its tortious interference with business theory in the amount of $13,500, which is in addition to the $5,508,689.89 in actual damages awarded on CO&G's other theories of liability.

D. Punitive Damages

¶35 Finally, the Agrawal defendants argue that the punitive damages award was excessive and that there is insufficient evidence to support what they refer to as a "default judgment" of punitive damages. Although the judgment in this case did not result from the entry of a default, the problem is that liability for punitive damages was imposed as a sanction for violating the district court's discovery and pretrial orders. Although punitive damages may be awarded as a sanction, section 9.1 specifies the factors on which a finder-of-fact must base an award of punitive damages:

1. The seriousness of the hazard to the public arising from the defendant's misconduct;
2. The profitability of the misconduct to the defendant;
3. The duration of the misconduct and any concealment of it;
4. The degree of the defendant's awareness of the hazard and of its excessiveness;
5. The attitude and conduct of the defendant upon discovery of the misconduct or hazard;
6. In the case of a defendant which is a corporation or other entity, the number and level of employees involved in causing or concealing the misconduct; and
7. The financial condition of the defendant.

23 O.S.2011 § 9.1(A). When punitive damages are awarded as a sanction, consideration of the relevant factors must appear on the record to permit meaningful appellate de novo review. Cooper Indus., Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 436, 121 S. Ct. 1678, 1685 (2001).

¶36 We recognize that the Oklahoma Supreme Court affirmed, in principle, an award of punitive damages entered as a discovery sanction in Payne v. DeWitt, 1999 OK 93, ¶ 10, 995 P.2d 1088. However, since Payne was decided section 9.1 has been the subject of significant amendments and the United States Supreme Court has issued two opinions concerning punitive damages relevant to this case. In Cooper Industries, the Court held that the Due Process Clause of the Fourteenth Amendment prohibits the imposition of "grossly excessive" or arbitrary punishments on a tortfeasor. Cooper Indus., 532 U.S. at 434, 121 S. Ct. at 1684. In State Farm Mutual Automobile Insurance v. Campbell, 538 U.S. 408, 418, 123 S. Ct. 1513, 1520, the Court reiterated that punitive damage awards must be based on the three "guideposts" announced in BMW of North America, Inc. v. Gore, 517 U.S. 559, 116 S. Ct. 1589 (1996). The Gore factors concern the reprehensibility of the conduct, the ratio of the punitive damages to the actual damages and the amount of awards for comparable misconduct. Campbell, 538 U.S. at 418, 123 S. Ct. at 1520 (citing Gore, 517 U.S. at 575, 116 S. Ct. at 1589). Regardless of the impetus for an award of punitive damages in this case, it is now clear that section 9.1 and the United States Constitution require evidence in the record that addresses the Gore guideposts.

1. The Fraudulent Inducement Claim

¶37 The district court found that the Agrawal defendants made "material fraudulent and/or negligent misrepresentations" including that they: (1) owned the entire oil and gas leasehold in the Hill Top Units, (2) overstated the productivity of the Hill Top Units wells, and (3) exaggerated the condition of the equipment and infrastructure associated with the Hill Top Units wells. That is essentially the same conduct that the court found resulted in the Agrawal defendants' breach of the August 2007 contract. The findings of the district court clearly support the award of actual damages on CO&G's breach of contract theory of liability even if liability on that theory had not been imposed as a sanction. Those findings also support the award of actual damages on CO&G's fraudulent inducement theory. And, the Agrawal defendants do not argue otherwise.

¶38 It is well settled in Oklahoma that "punitive damages may be recovered where the breach of a contractual obligation amounts to an independent tort with elements of malice, actual or presumed." LeFlore v. Reflections of Tulsa, Inc., 1985 OK 72, ¶ 39, 708 P.2d 1068 (decided pursuant to the predecessor to section 9.1). The issue is whether this record supports the award of $5,508,689.89 in punitive damages.

¶39 Punitive damages are an element of the recovery in the underlying tort action and are based on the proof of the underlying claim. Rodebush v. Okla. Nursing Homes, Inc., 1993 OK 160, ¶ 21, 867 P.2d 1241. The elements of fraud are: (1) a material representation; (2) that was false; (3) known to be false by the maker or made recklessly, without any knowledge of its truth and as a positive assertion; (4) made with the intention that it should be relied on; (5) the plaintiff acted in reliance upon it; and (6) thereby suffered injury. State ex rel. Southwestern Bell Tel. Co. v. Brown, 1974 OK 19, ¶ 19, 519 P.2d 491. Fraud must be proved by "clear and convincing evidence." OUJI-CIV No. 18.1; Brown v. Founders Bank and Trust Co., 1994 OK 130, n.17, 890 P.2d 855. Consequently, to affirm the award of punitive damages, the record must contain not only sufficient proof of the elements of fraud, but also "clear and convincing evidence" that the Agrawal defendants have "been guilty of reckless disregard for the rights of others" or that they "acted intentionally and with malice towards others." 23 O.S.2011 § 9.1. See also Wilspec Techs., Inc. v. Dunan Holding Group Co. Ltd., 2009 OK 12, ¶ 18, 204 P.3d 69 (holding that the plaintiff seeking punitive damages for tortious interference must prove by clear and convincing evidence that the defendant acted recklessly or maliciously in addition to proving the elements of the tort).

¶40 Further, the type of conduct described in section 9.1 as essential to an award of punitive damages concerns facts giving rise to the underlying claim, not a party's litigation conduct. "A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages. A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory individual or business." Campbell, 538 U.S. at 422-23, 123 S. Ct. at 1523. The conduct that harmed CO&G was the material misrepresentations that induced CO&G to sign the August 2007 contract. However, the district court did not quantify the degree to which those misrepresentations were material. Nonetheless, that evidence is relevant to the reprehensibility analysis. For example, did the Agrawal defendants overstate production from the Hill Top wells by ten percent or ninety percent? If the former, the misrepresentation would likely be sufficiently material to be fraudulent. But that does not necessarily mean that it was sufficiently reprehensible to warrant the imposition of punitive damages.

We have instructed courts to determine the reprehensibility of a defendant by considering whether: the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit, or mere accident.

Id. at 419, 123 S. Ct. at 1521.

¶41 Further, the punitive damage award must also be based on the section 9.1 factors and satisfy review considering the three Gore guideposts: (1) the degree of reprehensibility of the defendant's misconduct; (2) the disparity between the actual or potential harm suffered by the plaintiff and the punitive damages award; and (3) the difference between the punitive damages awarded and the penalties authorized or imposed in comparable cases. Id. at 418, 123 S. Ct. at 1520. And, "the conduct that harmed [the party seeking punitive damages] is the only conduct relevant to the reprehensibility analysis." Id. at 424, 123 S. Ct. at 1524.

¶42 Therefore, to warrant the imposition of more than just actual damages, CO&G was required to prove that the Agrawal defendants' fraudulent misrepresentations resulted from reckless or malicious conduct. Not all tortious conduct is "sufficiently reprehensible to justify a significant sanction in addition to compensatory damages." BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 576, 116 S. Ct. 1589, 1599. Further, reckless disregard for the rights of others or intentional malice are not elements of a fraudulent inducement claim. State ex rel. Southwestern Bell Tel. Co. v. Brown, 1974 OK 19, 519 P.2d 491. However, CO&G introduced no evidence of any conduct in connection with its fraud theory other than the facts it relied on to prove its breach of contract claim.

To be sure, infliction of economic injury, especially when done intentionally through affirmative acts of misconduct . . . or when the target is financially vulnerable, can warrant a substantial penalty. But this observation does not convert all acts that cause economic harm into torts that are sufficiently reprehensible to justify a significant sanction in addition to compensatory damages.

Gore, 517 U.S. at 576, 116 S. Ct. at 1599.

¶43 The only reckless or malicious conduct the district court found that the Agrawal defendants committed was their obstructive, bad faith refusal to comply with the district court's discovery and pretrial conference orders.[6] Although, as we have previously held, that conduct justifies the imposition of liability as a sanction, even liability on a claim permitting punitive damages, it does not address the reprehensibility issue and is insufficient to support the amount of punitive damages awarded in this case. Further, because CO&G received all of the actual damages it proved that it had incurred, punitive damages should only be awarded "if the [Agrawal] defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." Campbell, 538 U.S. at 419, 123 S. Ct. at 1521. The Agrawal defendants' litigation conduct is not proof of reckless or malicious conduct in the commission of the fraud sufficient to support a finding that their conduct was "reprehensible."

¶44 The second Gore guidepost examines the ratio of the punitive damage award to the actual damages. Even though a ratio of one-to-one is generally recognized as being within constitutional limits, and the punitive damage award in this case was equal to the $5,508,689.89 amount of actual damages, when compensatory damages are substantial, exemplary damages of an equal amount may violate due process. Id. at 425, 123 S. Ct. at 1524. Regardless of the ratio, "the proper inquiry is 'whether there is a reasonable relationship between the punitive damages award and the harm likely to result from the defendant's conduct as well as the harm that actually has occurred.'" TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 460, 113 S. Ct. 2711, 2721 (1993) (emphasis omitted) (quoting Pacific Mut. Life Ins. Co. v. Haslip, 499 U.S. 1, 21, 111 S. Ct. 1032, 1045). Ron Walker testified at the hearing on damages that if the Agrawal defendants' representations had been true, "it would have been a very worthwhile venture," and that he and his partners "would have recovered our money in the first 24 to 36 months and had an ongoing substantial income." Walker did not testify that they would never recover their money. CO&G now owns all of the Hill Top Units and continues to operate the wells in the Units and collect the revenue generated from those operations. It is, however, still responsible for future plugging and environmental costs. Therefore, measuring the harm likely to result from the Agrawal defendants' conduct remains to be determined.

¶45 Finally, the third Gore guidepost examines the difference between the punitive damages awarded and the penalties authorized or imposed in comparable cases. CO&G introduced no evidence at the hearing on damages comparing the punitive damages awarded here with the sanctions imposed in other cases for similar misconduct.

¶46 Consequently, we vacate that part of the district court's December 5, 2013 judgment awarding punitive damages in the amount of $5,508,689.89 together with any associated interest and costs to the extent that award is based on CO&G's fraudulent inducement theory of liability.

2. The Tortious Interference Claim

¶47 CO&G's tortious interference claim is a separate cause of action capable of supporting an award of punitive damages in the appropriate case. Wilspec Techs., Inc. v. Dunan Holding Group Co. Ltd., 2009 OK 12, 204 P.3d 69. We have affirmed the judgment in favor of CO&G for actual damages on this claim, but that does not resolve CO&G's entitlement to punitive damages. Liability for this claim was established as a sanction. Although malicious and wrongful interference is an element of the tort, tortious interference need only be shown "by the weight of the evidence." OUJI-CIV No. 24.1. Further, intentional interference may result from "malice in the law without personal hatred, ill will, or spite." Del State Bank v. Salmon, 1976 OK 42, ¶ 9, 548 P.2d 1024. However, "the plaintiff seeking punitive damages for tortious interference with a contract obligation must prove that the defendant acted either recklessly, intentionally, or maliciously by clear and convincing evidence." Wilspec Techs., 2009 OK 12, ¶ 18. The sanctions order on which the December 2013 judgment was based establishes that Kris Agrawal tortiously interfered with CO&G's business relations and particularly its business relationship with Scissortail Energy. However, at the hearing on damages, CO&G did not prove that Kris Agrawal's tortious conduct resulted from a reckless disregard for the rights of others or a malicious intent to harm.

¶48 Because de novo review of the record fails to show clear and convincing evidence of conduct warranting the imposition of a substantial award of punitive damages, the award of $5,508,689.89 in punitive damages is vacated. However, the record is not devoid of evidence that might support the award of some amount of punitive damages. Therefore, further consideration of this issue is required. This case is remanded for further hearing on CO&G's demand for punitive damages not inconsistent with this Opinion.

CONCLUSION

¶49 The award of $5,508,689.89 in punitive damages in the December 5, 2013 Final Journal Entry of Judgment is vacated. The award of actual damages based on CO&G's intentional interference with business relations theory of liability is modified to $13,500. In all other respects, the December 5, 2013 Final Journal Entry of Judgment is affirmed.[7] The district court's May 14, 2014 order denying the Agrawal defendants' motion for new trial is affirmed in part and reversed in part consistent with this Opinion. This case is remanded for further proceedings regarding CO&G's claim for punitive damages consistent with this Opinion.

¶50 AFFIRMED IN PART, VACATED IN PART, MODIFIED IN PART AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

RAPP, J., and GOODMAN, J., concur.

FOOTNOTES

[1] Vimala Agrawal and Newton Agrawal were dismissed from this action by CO&G on May 21, 2014, and are not parties to this appeal. Likewise, CO&G and Kensley Petroleum, LLC have previously resolved their dispute and Kensley is no longer a party in this case.

[2] "If . . . a party, in response to a request for inspection and copying submitted under Section 3234 of this title, fails to respond that the inspection or copying will be permitted as requested or fails to permit the inspection or copying as requested . . . the discovering party may move for an order compelling . . . inspection and copying in accordance with the request . . . ." 12 O.S.2011 § 3237(A)(2).

[3] Kris Agrawal's petition in error was filed before the order denying the motion for reconsideration was filed and sought review of only the December 2013 judgment. Because the Supreme Court treated the petition in error filed by the other Agrawal defendants as an amended petition in error, we will consider Kris Agrawal as having preserved appellate review of the May 2014 order denying the motion for new trial.

[4] This appeal was commenced on March 25, 2014, when Kris Agrawal filed his petition in error pro se (Case No. 112,681). On June 4, 2014, attorney Andrew Waldron filed appeal number 112,904 as counsel of record for Online, Realty Developers, Realty Management, Coal Gas and Coal Gas Mart. That appeal was consolidated with appeal 112,681, and the petition in error was treated as an amended petition in error. After attorney Waldron was permitted to withdraw, attorney Phillip Owen filed an entry of appearance on behalf of Online, Realty Developers, Realty Management, Coal Gas and Coal Gas Mart. The next day, attorney James Goodwin filed an entry of appearance on behalf of the same entities. Kris Agrawal has filed his appellate briefs pro se. The brief-in-chief of Online, Realty Developers, Realty Management, Coal Gas and Coal Gas Mart was filed by attorney Goodwin. The reply brief of Online, Realty Developers, Realty Management, Coal Gas and Coal Gas Mart was filed by attorney Owens.

[5] Even if we were to reverse the judgment against the Agrawal defendants as to all but the lien foreclosure claim for some error in the sanctions proceedings, only the quiet title aspect of the December 2013 judgment would potentially be at issue. However, because we affirm the judgment on CO&G's lien foreclosure claim, CO&G is entitled to have title to the oil and gas leases in the Hill Top Units quieted in its name. "Where the trial court reaches the correct result for the wrong reasons or on incorrect theories, it will not be reversed." Jacobs Ranch, L.L.C. v. Smith, 2006 OK 34, ¶ 58, 148 P.3d 842.

[6] The district court also found that Kris Agrawal, if not others, had engaged in spoliation of evidence. This finding is premised on the representation in July of 2013 that unredacted copies of the emails had been "lost" or "destroyed." The record now establishes that unredacted copies of the emails were not destroyed or lost and no longer supports the finding of spoliation of evidence.

[7] All pending motions filed by any party to this appeal which have not been previously decided are denied.

 





 Citationizer© Summary of Documents Citing This Document
 
 
 
 Cite
 Name
 Level
 
 
 
 None Found.
 
 
 Citationizer: Table of Authority
 
 
 
 Cite
 Name
 Level
 
 
 
 Oklahoma Supreme Court Cases
 Cite
Name
Level

 1992 OK 50, 830 P.2d 188, 63 OBJ 1289, Dismuke v. Cseh
Discussed
 1993 OK 160, 867 P.2d 1241, 64 OBJ 3709, Rodebush By and Through Rodebush v. Oklahoma Nursing Homes, Ltd.
Discussed
 1994 OK 130, 890 P.2d 855, 65 OBJ 3961, Brown v. Founders Bank and Trust Co.
Discussed
 2002 OK 30, 51 P.3d 562, HAYES v. CENTRAL STATES ORTHOPEDIC SPECIALISTS, INC.
Discussed
 2002 OK 31, 46 P.3d 698, JONES, GIVENS, GOTCHER & BOGAN, P.C. v. BERGER
Discussed
 1974 OK 19, 519 P.2d 491, STATE EX REL. SOUTHWESTERN BELL TEL. CO. v. BROWN
Discussed at Length
 2002 OK 83, 64 P.3d 1080, IN THE MATTER OF S.B.C.
Discussed
 2004 OK 84, 102 P.3d 670, HEAD v. McCRACKEN
Discussed
 2006 OK 34, 148 P.3d 842, JACOBS RANCH, L.L.C. v. SMITH
Discussed
 2006 OK 47, 139 P.3d 897, LIERLY v. TIDEWATER PETROLEUM CORPORATION
Discussed
 2007 OK 76, 171 P.3d 890, SPENCER v. OKLAHOMA GAS & ELECTRIC COMPANY
Discussed
 2008 OK 100, 197 P.3d 12, BARNETT v. SIMMONS
Discussed at Length
 2009 OK 12, 204 P.3d 69, WILSPEC TECHNOLOGIES, INC. v. DUNAN HOLDING GROUP, CO. LTD.
Discussed at Length
 2011 OK 1, 250 P.3d 305, CITY OF BROKEN ARROW v. BASS PRO OUTDOOR WORLD, L.L.C.
Discussed
 1976 OK 42, 548 P.2d 1024, DEL STATE BANK v. SALMON
Discussed
 1999 OK 93, 995 P.2d 1088, 70 OBJ 3452, Payne v. DeWitt
Discussed at Length
 2000 OK 5, 995 P.2d 1141, 71 OBJ 398, Slagell v. Slagell
Discussed
 1984 OK 24, 681 P.2d 757, Horizons, Inc. v. Keo Leasing Co.
Discussed at Length
 1985 OK 2, 695 P.2d 1, Walker v. Walker
Discussed
 1985 OK 72, 708 P.2d 1068, LeFlore v. Reflections of Tulsa, Inc.
Discussed
Title 12. Civil Procedure
 Cite
Name
Level

 12 O.S. 991, Right to Perfect Appeal to Supreme Court without Filing Motion for New Trial - Exemption
Cited
 12 O.S. 3224, Short Title and Scope of Code
Cited
 12 O.S. 3227, Depositions Before Action or Pending Appeal
Cited
 12 O.S. 3237, 12 O.S. 3237, Failure to Make or Cooperate in Discovery - Sanctions
Discussed
Title 23. Damages
 Cite
Name
Level

 23 O.S. 9.1, Damages for Sake of Example and Punishment of Defendant - Punitive Damages Awards by Jury
Discussed at Length


 
 








 
 
 
 

 
 

 
 
 
 oscn
 
 EMAIL: webmaster@oscn.net
 Oklahoma Judicial Center
 2100 N Lincoln Blvd.
 Oklahoma City, OK 73105
 
 
 courts
 
 Supreme Court of Oklahoma
 Court of Criminal Appeals 
 Court of Civil Appeals
 District Courts
 
 
 
 decisions
 
 New Decisions
 Supreme Court of Oklahoma
 Court of Criminal Appeals
 Court of Civil Appeals
 
 
 
 programs
 
 The Sovereignty Symposium
 
 Alternative Dispute Resolution
 Early Settlement Mediation
 Children's Court Improvement Program (CIP)
 Judicial Nominating Commission
 Certified Courtroom Interpreters
 Certified Shorthand Reporters
 Accessibility ADA
 
 
 
 
 
 
 
 
 Contact Us
 Careers
 Accessibility ADA